J. S15041/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                               :        PENNSYLVANIA
                    v.         :
                               :
ISIAH J. MANLEY,               :        No. 3775 EDA 2016
                               :
              Appellant        :


Appeal from the Judgment of Sentence, November 16, 2016,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0011254-2015


BEFORE:  STABILE, J., DUBOW, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MAY 03, 2018**

Isiah J. Manley appeals from the November 16, 2016 aggregate judgment of sentence of 4 to 8 years' imprisonment, followed by 2 years' probation, imposed after he was found guilty of aggravated assault, disarming a law enforcement officer, simple assault, recklessly endangering another person ("REAP"), resisting arrest, fleeing or attempting to allude a police officer, driving under the influence of a controlled substance ("DUI"), possession of a controlled substance, possession of a controlled substance with the intent to deliver ("PWID"), and possession of drug paraphernalia.[1] After careful review, we affirm the judgment of sentence.

The trial court summarized the relevant facts of this case as follows:

---

[1] 18 Pa.C.S.A. §§ 2702(a), 5104.1(a)(1), 2701(a), 2705, 5104; 75 Pa.C.S.A. §§ 3733(a) and 3802(d)(1); and 35 P.S. §§ 780-113(a)(16), 780-113(a)(30), and 780-113(a)(32), respectively.

On October 5, 2015, Pennsylvania State Trooper, Phillip Cyphers, was conducting patrol duties on I-76 in the city and county of Philadelphia.[]  While traveling eastbound past the City Line Avenue on-ramp toward Montgomery Drive, he observed a dark Nissan Ultima exit Route 1 southbound on I-76 eastbound, travelling in the left lane at an excessive rate of speed.  He began to pace the vehicle at 70 miles per hour for 3/10ths of a mile.  He also observed that the vehicle had heavy window tint all around the vehicle; including a cover over the plate which prevented Trooper Cyphers from seeing the license plate (he could only make out the first two letters, X and P through the tint) when he pulled behind the vehicle.

After activating his lights and siren, Trooper Cyphers attempted to pull the vehicle over for the traffic violations.  The vehicle appeared to pull over to the shoulder of the road near the Montgomery Drive ramp but then continued to drive on the shoulder, cross over the ramp, and accelerate from the officer at a high rate of speed.  Trooper Cyphers followed and the vehicle exited eastbound 1-76 onto Girard Avenue and a red light.  Traffic was backed up on the ramp, so the vehicle passed the cars on the right.  The light turned green and the vehicle turned left onto Girard Avenue, almost striking the front of another vehicle that was also turning left at the light.  As Trooper Cyphers continued to follow the vehicle, he observed the vehicle cutting in and out of traffic.  At the intersection of 34th Street and Girard Avenue, the driver lost control of the vehicle, spinning clockwise, then counter-clockwise.  Regaining control, the vehicle turned right onto 34th Street toward University City using both lanes of travel.  Trooper Cyphers stated that the vehicle was traveling at 80 miles per hour in a 30 mile per hour zone.  Once over the crest of the hill, the driver once again lost control of the vehicle.  Trooper Cyphers observed the driver hit the brakes, cross over both lanes of travel in the opposite direction, and strike a concrete barrier.  The vehicle rolled backward across

the intersection of 34th Street and Mantua Avenue (a residential area) where it took down the pedestrian walk sign, then come to a complete stop on the opposite side of the street facing Trooper Cyphers who now had a full frontal view of the windshield and the driver. Trooper Cyphers identified [appellant] as the driver of the vehicle.

Trooper Cyphers observed [appellant] and the passenger "frantically" moving about the vehicle, reaching under the seat, into the glove box, the center console, and all around the vehicle. The occupants of the vehicle continued to move even after Trooper Cyphers yelled for them to stop. He was not sure what they were trying to find. He then observed [appellant] get into the backseat and the passenger exit the vehicle and begin to run. He saw the passenger holding his hands close to [his] chest with what appeared to be a white brick that looked like a "stick of butter." The white brick fell to the ground and the passenger was picking up items; he was falling and dropping everything. He also saw what appeared to be United States Currency dropping to the ground. Trooper Cyphers yelled at the passenger and chased him to the back of the crashed vehicle. Trooper Cyphers stopped chasing the passenger because [appellant] was still in the vehicle.

As he turned his attention back to the vehicle, Trooper Cyphers observed [appellant] exit the vehicle and walk toward him. Trooper Cyphers told him to stop, but [appellant] kept walking toward him. Still holding his weapon, Trooper Cyphers decided to take out his Taser because he observed that the driver's hands were at his sides and he felt deadly force was not necessary. [Appellant] would not obey commands to stop and get on the ground; he just kept walking toward the Trooper. Trooper Cyphers approached [appellant], and [appellant] started to resist and push away from him. [Appellant] then began to reach for Trooper Cyphers who was still holding his duty weapon. Trooper Cyphers pushed away from

- 3 -

[appellant] to put his gun in its holster and [appellant] started to run and was turning away from him. At that time Trooper Cyphers deployed his [t]aser and struck [appellant] in the chest with one (1) probe. [Appellant] pulled the probe off and began to run. Never losing sight of him, Trooper Cyphers began to chase him down 34th Street until [appellant] made a right onto Fairmount Avenue. Trooper Cyphers reloaded the Taser as [appellant] stopped and turned towards him. He yelled for [appellant] to get on the ground, but he still did not comply. As [appellant] turned to run again, Trooper Cyphers tased him for a second time. Two (2) probes struck, one on his shoulder blade and the other on his upper back. [Appellant] then went down on the ground.

[Appellant] continued to resist as Trooper Cyphers was trying to handcuff him. [Appellant] kicked and punched at Trooper Cyphers[,] who was not sure if any of the kicks or punches actually landed since it was happening so fast. Trooper Cyphers then felt [appellant] pulling on his belt "like he was trying to pull me to the ground." Both probes were still on [appellant] so Trooper Cyphers hit the taser again, but there was no effect. [Appellant] stood right up and engaged Trooper Cyphers, who was then disarmed of his Taser; he still had his handcuffs. Facing each other, [appellant] grabbed behind Trooper Cyphers['] head and interlocked both of his hands, trying to pull Trooper Cyphers down. They both went down onto the ground and after "wrestling for a better position," Trooper Cyphers was able to get on top of [appellant]. [Appellant] began pulling down on Trooper Cyphers['] collar and belt again. At this point, Trooper Cyphers stated that he felt the encounter turned from [appellant] trying to get away and resisting arrest to he was trying to incapacitate him to get away. Trooper Cyphers was able to stand up and [appellant] continued to pull on his gear, pulling him down. Trooper Cyphers struck [appellant] in the face and that seemed to stop the struggle; however he was still not complying with

getting up. A crowd started to gather and Trooper Cyphers was yelling for help to no avail. With no one helping him, Trooper Cyphers held onto [appellant] waiting for back-up. An older gentleman eventually came over and began talking to [appellant]. [Appellant] relaxed, rolled over, and handcuffs were placed on him. Trooper Cyphers estimated that the encounter lasted approximately five to seven minutes.

Trial court opinion, 5/19/17 at 2-5 (citations to notes of testimony and footnotes omitted).

On September 7, 2016, appellant waived his right to a jury and proceeded to a bench trial. Following a one-day bench trial, the trial court found appellant guilty of the aforementioned offenses. On November 15, 2016, appellant filed a motion for extraordinary relief that was denied by the trial court the following day. As noted, appellant was sentenced to an aggregate term of 4 to 8 years' imprisonment, followed by 2 years' probation, on November 16, 2016. Appellant did not file any post-sentence motions. This timely appeal followed on December 9, 2016. On March 13, 2017, the trial court directed appellant to file a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b). Appellant filed a timely Rule 1925(b) statement on April 3, 2017, and the trial court filed its Rule 1925(a) opinion on May 19, 2017.

Appellant raises the following issues for our review:

1. Was not the evidence insufficient to prove beyond a reasonable doubt the charge of aggravated assault as a felony of the first degree in that the evidence failed to prove that

[a]ppellant had caused or attempted to cause serious bodily injury to a police officer?

2.  Was not the evidence insufficient to prove beyond a reasonable doubt the charge of disarming law enforcement officer in that the evidence failed to prove that [a]ppellant had removed, attempted to remove or deprived the officer of his use of a [t]aser?

Appellant's brief at 2.

Appellant first argues that there was insufficient evidence to sustain his conviction for aggravated assault because "the Commonwealth failed to prove that appellant [] caused or attempted to cause serious bodily injury to [Trooper Cyphers]." (***Id.*** at 13.) Appellant avers that Trooper Cyphers suffered only minor injuries that "occurred during [his] attempt to resist arrest, which was [his] only purpose." (***Id.***)

Our standard of review in assessing whether there was sufficient evidence to sustain appellant's convictions is well settled.

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Thomas*, 988 A.2d 669, 670 (Pa.Super. 2009) (citations omitted), *appeal denied*, 4 A.3d 1054 (Pa. 2010).

Instantly, appellant was convicted of aggravated assault, as a felony of the first degree, under 18 Pa.C.S.A. § 2702(a). A person will be found guilty of aggravated assault under Subsection (a)(1) if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" *Id.* § 2702(a)(1). Likewise, under Subsection (a)(2), a person will be found guilty of aggravated assault if he "attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c) . . . while in the performance of duty[.]" *Id.* § 2702(a)(2).[2] The term "serious bodily injury" is defined by statute as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. Where the victim does not sustain serious bodily injury, the Commonwealth must prove that the defendant attempted to cause such injury. *See Commonwealth v. Martuscelli*, 54 A.3d 940, 948 (Pa.Super. 2012) (stating, "[a]n attempt under Subsection 2702(a)(1) requires some act,

---

[2] A police officer is one of the enumerated persons listed under Subsection (c). *See* 18 Pa.C.S.A. § 2702(c)(1).

albeit not one causing serious bodily injury, accompanied by an intent to inflict serious bodily injury."), citing **Commonwealth v. Matthew**, 909 A.2d 1254, 1257-1258 (Pa. 2006).

> For aggravated assault purposes, an "attempt" is found where an accused who possesses the required, specific intent acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another. An intent ordinarily must be proven through circumstantial evidence and inferred from acts, conduct or attendant circumstances.

**Commonwealth v. Fortune**, 68 A.3d 980, 984 (Pa.Super. 2013) (**en banc**) (citations and some internal quotation marks omitted), **appeal denied**, 78 A.3d 1089 (Pa. 2013).

Here, it is undisputed that appellant did not cause serious bodily injury to Trooper Cyphers. Trooper Cyphers testified that following this incident, he was treated at the hospital for injuries to his knee, as well as several open wounds to his left hand, one of which appeared to be from a tooth mark. (Notes of testimony, 9/7/16 at 45, 59.) Thus, the relevant inquiry is whether appellant acted with the specific intent to cause serious bodily injury. **See Commonwealth v. Lewis**, 911 A.2d 558, 564 (Pa.Super. 2006), (stating, "[w]here the victim does not sustain serious bodily injury, the Commonwealth must prove that the appellant acted with specific intent to cause serious bodily injury." (citation omitted)).

Viewing the evidence in the light most favorable to the Commonwealth, the verdict winner, we find that there was sufficient

evidence from which the trial court could infer that appellant possessed the requisite intent to cause serious bodily injury to Trooper Cyphers and took a substantial step toward that end. As noted, the testimony presented at trial established that appellant wrestled with, kicked and punched, and attempted to pull Trooper Cyphers down to the ground multiple times by his belt and collar during the course of their prolonged struggle. (Notes of testimony, 9/7/16 at 39-41, 58.) Trooper Cyphers testified that at one point, "[appellant] grabbed behind [his] head and . . . interlocked both of his hand[s]" behind his neck, in an attempt to pull him down. (***Id.*** at 41.) The record further indicated that this was not a single, isolated interaction. Trooper Cyphers testified that his struggle with appellant lasted approximately "five to seven minutes" and he "felt . . . it went from more of [appellant] trying to get away and resist arrest **to the point where he was trying to incapacitate [him] to get away.**" (***Id.*** at 42-43 (emphasis added).)

Here, the trial court reasoned that, based on the attendant circumstances, "[i]t is clear from [appellant's] action of wrapping of [sic] his hands around Trooper Cyphers['] neck that he not only intended to get away, but his intent [was] to do whatever he had to do to get away, including injuring Trooper Cyphers." (Trial court opinion, 5/19/17 at 10.) In rendering its verdict, the trial court further explained as follows:

> Once you wrap your hands around the back of
> someone's neck, that's [sic] indicates not only your

> intent to get away but your intent to do whatever you have to do to flee and that includes serious injury or death. That kind of grip is what is known as a death grip. You will do whatever it takes so that you are not apprehended.

Notes of testimony, 9/7/16 at 112-113.

Based on the foregoing, we agree with the trial court that appellant acted with the requisite intent to cause serious bodily injury to Trooper Cyphers in this case. Accordingly, we find that appellant's contention that the Commonwealth failed to present sufficient evidence to sustain his conviction for aggravated assault must fail. *See*, *e.g.*, *Commonwealth v. Dailey*, 828 A.2d at 356, 360-361 (Pa.Super. 2013) (finding that the evidence was sufficient to sustain the defendant's conviction for, *inter alia*, aggravated assault under Section 2702(a)(2), where it demonstrated that the defendant intended to inflict serious bodily injury to a corrections officer by striking him twice in the face with a closed fist, causing him to suffer a cut on his nose, swelling around his left eye, and bruising).

We now turn to appellant's claim that there was insufficient evidence to sustain his conviction for disarming a law enforcement officer "where the evidence failed to prove that appellant had removed, attempted to remove or deprived [Trooper Cyphers] of the use of [his] taser." (Appellant's brief at 18.) In support of this contention, appellant avers "there [was] no testimony whatever [sic] that [he] attempted to grab the weapon," and that

the trial court's rationale disregards the fact that Trooper Cyphers may have simply "dropped or threw [the taser] away[.]" (**Id.** at 19-20.)

The crime of disarming a law enforcement officer is set forth in 18 Pa.C.S.A § 5104.1, which provides, in relevant part, as follows:

> **(a)** **Offense defined.--**A person commits the offense of disarming a law enforcement officer if he:
>
> (1) without lawful authorization, removes or attempts to remove a firearm, rifle, shotgun or weapon from the person of a law enforcement officer or corrections officer, or deprives a law enforcement officer or corrections officer of the use of a firearm, rifle, shotgun or weapon, when the officer is acting within the scope of the officer's duties; and
>
> (2) has reasonable cause to know or knows that the individual is a law enforcement officer or corrections officer.

*Id.* at § 5104.1(a).

Here, we find that the evidence, when viewed in the light most favorable to the Commonwealth, was sufficient to sustain appellant's conviction for disarming a law enforcement officer. As recognized by the trial court, Trooper Cyphers' testimony at trial created a logical inference that appellant intended to disarm Trooper Cyphers of his taser during their ensuing struggle. (**See** trial court opinion, 5/19/17 at 11.) Moreover, appellant's argument disregards the fact that appellant's actions did, in fact,

"deprive [Trooper Cyphers] of the use of [his taser]" during the scope of his official duties. (*See* 18 Pa.C.S.A § 5104.1(a)(1).) Trooper Cyphers testified that after he succeeded in getting appellant down on the ground by tasering him a second time, appellant resisted Trooper Cyphers' attempt to place him in handcuffs by rolling away, kicking at him, and punching. (Notes of testimony, 9/7/16 at 38-39.) Trooper Cyphers noted that during the course of this struggle, he felt appellant pulling down on his duty belt "like he was trying to pull [him] to the ground." (*Id.* at 39.) After Trooper Cyphers again tasered appellant, to no avail, appellant stood up and engaged him. (*Id.*) Trooper Cyphers testified that at this point, he "was disarmed of [his] taser" (*see id.*), but was not entirely sure of how this had occurred:

> Q. When [appellant] stood up is he facing you?
>
> A. Correct.
>
> Q. You said -- where is your taser at this point?
>
> A. I had it in my hand and it was disarmed.
>
> Q. How?
>
> A. I'm not sure exactly how but when he came at me he grabbed onto me and that's when I lost the taser.

*Id.* at 40.

Based on the foregoing, we find that appellant's contention that there was insufficient evidence to sustain his conviction for disarming a law

enforcement officer must fail. Accordingly, we affirm appellant's November 16, 2016 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/3/18