J-S64013-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                               :            PENNSYLVANIA
                               :
           v.                    :
                               :
                               :
SHYNEICE JAMES             :
                               :
            Appellant          :     No. 1946 EDA 2017

Appeal from the Judgment of Sentence January 27, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001679-2014

BEFORE:  BOWES, J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.:              **FILED FEBRUARY 26, 2019**

Shyneice James appeals from the judgment of sentence imposed following her convictions for aggravated assault and endangering the welfare of a child ("EWOC").  We vacate the judgment of sentence, reverse the conviction for aggravated assault, affirm the conviction for EWOC, and remand for resentencing.

On April 12, 2013, Appellant and her boyfriend, Samuel Jones, were in a bedroom at their residence when their seven-month-old son, C.J., was stabbed in the head with a folding knife.[1]  Appellant and Jones provided multiple versions of how the stabbing occurred.  They initially told police that C.J. was on the bed and must have fallen back on the knife, which was on the

---

[1] The folding knife had a three-inch blade and a four and one-half inch handle. N.T. Trial, 7/20/16, at 110-11; N.T. Trial, 6/11/15, at 246.

bed. N.T. Trial, 7/19/16, at 140; N.T. Trial, 6/12/15, at 227-28; N.T. Trial, 6/10/15, at 79. Appellant and Jones later told police that C.J. had been on the floor and was pulling himself up on the bed when he must have fallen backwards and cut himself on the knife, which was on the floor. N.T. Trial, 7/19/16, at 150-51; N.T. Trial, 6/12/15, at 80. Appellant and Jones subsequently provided several more versions of the events leading up to C.J.'s injury, all of which placed C.J. on the bed when he was stabbed. N.T. Trial, 6/12/15, at 90, 106, 119, 120, 248-49; N.T. Trial, 6/10/15, at 90.

After Jones was advised of the grave condition of his son, and that he had suffered massive brain injuries, Jones provided the following statement to police:

> I, [and Appellant], who is my seven-month-old son's mother, were in the bedroom having an argument. When she lunged at me from the bed where she was sitting, I didn't realize my son was standing behind her in the bed. But as she lunged at me, I didn't realize I was holding a folding knife that I had picked up in my hand. It was open and as I approached to wrap my arms around [Appellant], I accidentally stabbed my son in the left side of his head. I didn't immediately realize I had the knife in my hand until I picked up my son and he was bleeding from the back of his head.

N.T. Trial, 7/21/16, at 119; N.T. Trial, 6/12/15, at 138-39. Appellant admitted that she and Jones had been arguing about his communications with an ex-girlfriend, and that there was some pushing and shoving at the time C.J. sustained his injuries. N.T. Trial, 7/20/16, at 179-80; N.T. Trial, 6/12/15, at 244-45, 248; N.T. Trial, 6/11/15, at 278. No version of events was provided by either Appellant or Jones in which Appellant was holding the knife.

Although C.J. survived the stabbing, as of the 2016 retrial,[2] he had a shunt in his head, was fed through a g-tube inserted through his stomach, lacked the ability to cry or to talk, and could not walk. N.T. Trial, 7/21/16, at 17.

Appellant was arrested and charged with aggravated assault, EWOC, and possession of an instrument of crime. A joint trial took place in June of 2015. Neither Appellant nor Jones testified. The jury convicted Appellant of EWOC, but was hung on the other charges. At a retrial before a jury in 2016, neither Appellant nor Jones took the witness stand. The 2016 jury convicted Appellant of aggravated assault.[3] On January 27, 2017, the trial court sentenced Appellant to an aggregate term of eight and one-half to twenty-seven years of incarceration.[4] She filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Appellant raises the following issues for our review:

1. Was there insufficient evidence to convict [Appellant] of aggravated assault and EWOC?

_____

[2] C.J. was one month shy of turning four years old at the time of the 2016 trial.

[3] The 2015 jury was also hung on the charges against Jones, which included aggravated assault and possession of an instrument of crime. Jones pled guilty prior to the 2016 trial. He is not a party to this appeal.

[4] The trial court sentenced Appellant to a prison term of three and one-half years to seven years for the EWOC conviction, followed by a consecutive prison sentence of five to twenty years for the aggravated assault conviction.

> 2. Did the [trial] court err by ruling that a life[-]in[-]being video of [C.J.] was admissible?

Appellant's brief at 3 (unnecessary capitalization omitted).

In her first issue, Appellant contends that the evidence was insufficient to support her convictions of aggravated assault and EWOC. Our standard of review of sufficiency claims is well-settled:

> we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Franklin*, 69 A.3d 719, 722 (Pa.Super. 2013) (citations and quotation marks omitted).

To be guilty of aggravated assault under 18 Pa.C.S. § 2702(a)(1), Appellant must have attempted to cause serious bodily injury, or "cause[d] such injury intentionally, knowingly, or recklessly, under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1). "Serious bodily injury" is defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. An attempt to cause serious bodily injury "is

- 4 -

found where an accused who possesses the required specific intent acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another." ***Commonwealth v. Fortune***, 68 A.3d 980, 984 (Pa.Super. 2013) (*en banc*) (citing ***Commonwealth v. Gray***, 867 A.2d 560, 567 (Pa.Super. 2005)).

Appellant claims that the Commonwealth failed to prove that she acted with the *mens rea* necessary to support her conviction for aggravated assault. She argues that the mere presence of a folding knife in proximity to a small child does not mean that there was any attempt to cause serious bodily injury or that there was recklessness causing circumstances manifesting extreme indifference to the value of human life. Appellant claims that the only mental state that could support her conviction for aggravated assault was a degree of recklessness which rose to the level of malice. She claims that the Commonwealth failed to meet its burden of proving recklessness, as she "did not display a conscious disregard for almost certain death or injury such that was tantamount to an actual desire to injure or kill[, n]or was [her] conduct . . . such that one could reasonably anticipate that death or serious bodily injury would likely and logically result." Appellant's brief at 20.

The Commonwealth agrees with Appellant that the evidence is insufficient to support her conviction for aggravated assault. Nevertheless, the trial court maintains that the evidence was sufficient to support that conviction on the following basis:

> [C]ommon sense can determine that jumping toward an individual with a child and a knife in hand provides a substantial and unjustifiable risk of serious bodily injury. Here, we have two grown adults in a bedroom fighting with a small child present in the room. At some point, a knife is introduced during their argument. Appellant gets up and lunges toward Mr. Jones who has a 7-month-old child in his arms. A small, delicate infant in the arms of someone Appellant attacked. Mr. Jones went on to hold Appellant to stop her and somehow the knife entered [C.J.'s] head. On these facts, the jury was proper in returning a guilty verdict on aggravated assault . . . Here, because the Commonwealth showed that Appellant acted, at the very least, recklessly under the circumstances manifesting an extreme indifference to the value of human life, and that [C.J.] sustained serious bodily injury as a result, Appellant was properly convicted of aggravated assault.

Trial Court Opinion, 1/16/18, at 7 (citations to the record omitted).

The evidence of record from the 2016 trial at which Appellant was convicted of aggravated assault does not support the trial court's analysis, which was based on its belief that Appellant lunged at Jones while he was holding both the knife and C.J. Although Appellant and Jones provided multiple versions of the incident, no version involved Appellant lunging at Jones while he was holding C.J., let alone holding both C.J. and the knife. Rather, in each of the versions provided by Appellant and Jones wherein Appellant lunged at Jones, C.J. was on the bed behind Appellant. Thus, the trial court's reasoning is flawed because it is unsupported by the record.

Based on our review, we are constrained to agree with Appellant and the Commonwealth that the evidence from the 2016 trial does not support her conviction for aggravated assault. In each version of events, C.J. was injured when he was either sitting on the bed or trying to pull himself onto the bed.

- 6 -

While the evidence of record supports a determination that Appellant lunged at Jones while he had the knife, there is no evidence in the record that Jones was holding C.J. when Appellant lunged at him. In our view, Appellant's conduct in lunging at Jones while he was holding a knife was insufficient to establish that she acted "under circumstances manifesting extreme indifference to the value of human life," 18 Pa.C.S. § 2702(a)(1), or "in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another," **Fortune**, **supra** at 984. Accordingly, we reverse the conviction for aggravated assault.

Appellant also claims that the evidence failed to establish that she acted with the *mens rea* necessary to support her conviction for EWOC. The Pennsylvania Crimes Code defines EWOC as:

> A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

18 Pa.C.S. § 4304(a)(1). Our Supreme Court has noted that, while EWOC is a specific intent crime, the "statute is necessarily drawn broadly to capture conduct that endangers the welfare of a child." **Commonwealth v. Lynn**, 114 A.3d 796, 819 (Pa. 2015). EWOC is committed when:

> (1) the accused is aware of his/her duty to protect the child; (2) the accused is aware that the child is in circumstances that could threaten the child's physical or psychological welfare; and (3) the accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.

*Id*. (internal citations omitted).

Appellant contends that evidence did not establish that she violated a duty of care to C.J. or that she was aware that her actions had placed him in circumstances that could threaten his physical welfare. She further argues that the injury to C.J. was not due to her endangering her son.

Viewing the evidence from the 2015 trial at which Appellant was convicted of EWOC in the light most favorable to the verdict winner, and giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence, we conclude that the evidence and testimony was sufficient to establish that Appellant knowingly endangered C.J.'s welfare by violating a duty of care and protection. 18 Pa.C.S. § 4304(a)(1).

Appellant admitted that she had used the knife on the prior evening when she went to the store, and that she had placed it in the bedroom on the dresser.[5] N.T. Trial, 6/12/15, at 232; *see also* N.T. Trial, 6/11/15, at 277 (wherein Appellant stated that she had placed the knife on her bedside table). Appellant also admitted that she and Jones were engaged in a physical fight, which included pushing and shoving over Jones's communications with an ex-girlfriend, when C.J. was injured. *Id*. at 244-45, 248-49. According to Jones's statement to police, he and Appellant were arguing, and he was holding the knife when Appellant lunged at him. N.T. Trial, 6/12/15, at 138-39.

---

[5] Appellant also conceded that her other son, four-year-old son, A.J., could reach the dresser. N.T. Trial, 6/12/15, at 241.

The above testimony, if believed by the jury, was sufficient to establish that Appellant knowingly endangered C.J.'s welfare by violating a duty of care and protection. 18 Pa.C.S. § 4304(a)(1). As C.J.'s mother, Appellant was certainly aware of her duty to protect him. *Lynn*, *supra* at 819. Although multiple versions of the incident were given by Appellant and Jones, the jury was free to accept the versions in which Appellant, in close proximity to her infant son, engaged in an argument with Jones, an adult individual holding a knife that she left on the bedside table, accessible to at least one of her small children. Under these facts, she was aware, or should have been aware, that her child was in circumstances that could threaten his physical or psychological welfare. *Id*. Instead of removing the threat, or attempting to diffuse the situation, she escalated it by engaging in pushing and shoving with, and ultimately lunging at Jones who was holding the open knife in close proximity to her infant son. Under these facts, we conclude that Appellant "either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare." *Id*. Thus, despite Appellant's arguments to the contrary, we affirm her conviction for EWOC.[6]

_____

[6] Although the trial court's analysis is flawed to the extent that it bases its sufficiency analysis for the EWOC conviction, in part, on its unsupported belief that Appellant lunged at Jones while he was holding both C.J. and the knife, we may affirm on any valid basis appearing of record. *See Commonwealth v. Moore*, 937 A.2d 1062, 1073 (Pa. 2007).

In her second issue, Appellant contends that the trial court erred by permitting the jury to view a life-in-being video, which depicts C.J.'s struggles with daily life. In reviewing a trial court's ruling on the admissibility of evidence, our standard of review is one of deference. *Commonwealth v. Selenski*, 18 A.3d 1229, 1232 (Pa.Super. 2011). Questions concerning the admissibility of evidence are within "the sound discretion of the trial court, and its discretion will not be reversed absent a clear abuse of discretion." *Id*. (citation omitted). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Harris*, 884 A.2d 920, 924 (Pa.Super. 2005) (internal citations and quotation marks omitted).

Appellant contends that admission of the video was needlessly cumulative because there was an abundance of medical evidence that C.J. suffered serious bodily injury due to his extensive brain damage. Appellant argues that the video is not relevant to the primary issue in the case, which was "who actually committed the particular offense." Appellant's brief at 22. Appellant further claims that the video should not have been admitted because it was made shortly before trial, and not in proximity to when the injuries occurred. Finally, Appellant argues that the probative value of the video was outweighed by the danger of unfair prejudice, and that the cautionary

instruction provided by the trial court did not cure the prejudicial effect of the video, thereby preventing her from receiving a fair trial.

The trial court provided the following explanation for its ruling to admit the life-in-being video:

> Here, . . . it is the Commonwealth's burden of proof to prove every element of aggravated assault, one of those elements being serious bodily injury. The video is relevant in that it shows the level of injuries sustained by [C.J.]. Although this [c]ourt agreed that this video is somewhat prejudicial, that level of prejudice does not outweigh the probative value that this evidence is offered for, the seriousness of the victim's injuries. This goes to the crux of the Commonwealth's case for proving aggravated assault. Specifically, the Commonwealth has to prove the type of bodily injury that "creates a substantial risk of death or that causes serious permanent disfigurement or protracted loss or impairment." Therefore, Appellant's argument that the video is less relevant because of the proximity in time to the incident, is misplaced. The video is important in that it shows the child's "serious permanent disfigurement." Naturally, the Commonwealth would prefer to use footage years following the incident, as it would better prove permanent disfigurement than a video taken days following the incident. The fact that this video is years later adds to the level of probative value of the evidence offered in that video. The Commonwealth added: "[w]e can bring [the victim] in. Would that be better? This is a trial; we have the right to do that. To minimize the prejudicial effect, there is a video." Additionally, this [c]ourt provided the following cautionary instruction to the jury before playing the video:
>
> > [M]embers of the jury, the video that you are about to watch will be admitted into evidence for the sole purpose of proving, for the Commonwealth to prove that the child has suffered serious bodily injury. That is [the Commonwealth's] burden and [it] has to meet that burden. [The Commonwealth] is using this video for that purpose only. It is not easy to watch, and it is not pleasant. So, you should not let it stir up your emotions or prejudice of either defendant in any way. Your verdict must be based on rational and fair consideration of all the evidence and not on passion

- 11 -

or prejudice or emotions that you may feel against the defendants, the Commonwealth, or anyone else connected to this case. . . . [N.T. Trial, 7/21/16, at 20-21.]

Although Appellant argues that serious bodily injury was already established by the physician, it certainly was not known at the moment during trial, as the jury must still deliberate and determine whether the serious bodily injury standard for aggravated assault was met. The video was important just as the physician's testimony was to help the Commonwealth prove serious bodily injury, as they were required to do. Therefore, this [c]ourt did not err in admitting the video of the child.

Trial Court Opinion, 1/16/18, at 9-10 (citations to the record omitted).

We discern no abuse of discretion by the trial court in admitting the life-in-being video of C.J. Based upon our independent review of the video, we conclude that it presents a benign depiction of C.J. attempting to sit and eat; tasks that he should have mastered years before but for his extensive brain injuries. While we agree that the video is somewhat prejudicial, the record does not show that the court's evidentiary ruling that such prejudice was outweighed by the video's probative value in establishing the seriousness of C.J.'s injuries was manifestly unreasonable, or the result of bias, prejudice, ill-will, partiality, or the overriding misapplication of the law. **See Harris**, **supra**.

Moreover, the trial court provided a limiting instruction to the jurors, advising them that the video was being admitted for the sole purpose of establishing that C.J. suffered serious bodily injury, and that "you should not let it stir up your emotions or prejudice of either defendant in any way." N.T. Trial, 7/21/16, at 20-21. Since the jury is presumed to follow the court's

- 12 -

instructions, we find that the trial court did not err by allowing the video to be shown. **See Commonwealth v. Simpson**, 66 A.3d 253, 269 (Pa. 2013) (holding that appellate courts presume that juries follow instructions); **see also Commonwealth v. Baez**, 720 A.2d 711, 727 (Pa. 1998) (holding that, where the trial court issued a limiting instruction to the jury prior to showing the video depicting the victim's body, cautioning the jurors as to its narrow relevance and clearly instructing them not to allow the video to stir their emotions to the prejudice of the defendant, there was no error, since the jury is presumed to follow the court's instructions). Accordingly, Appellant's second issue warrants no relief.

Based on our determinations herein, we affirm Appellant's conviction for EWOC, and reverse her conviction for aggravated assault. However, because reversing Appellant's conviction for aggravated assault may disrupt the trial court's overall sentencing scheme, we vacate her judgment of sentence and remand for resentencing on the EWOC conviction. **See Commonwealth v. Barton-Martin**, 5 A.3d 363, 370 (Pa.Super. 2010) (providing that where vacating a sentence disrupts a trial court's overall sentencing scheme, this Court will remand to the trial court for resentencing).

Judgment of sentence vacated, conviction for aggravated assault reversed, conviction for EWOC affirmed, case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/26/19