J-A29029-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                       :             PENNSYLVANIA
                                       :

               v.                   :
                                       :
                                     :

ANTWAN M. COOKE                :
                                     :
            Appellant        :     No. 682 MDA 2020

Appeal from the Judgment of Sentence Entered February 12, 2020,
in the Court of Common Pleas of Dauphin County,
Criminal Division at No(s): CP-22-CR-0000975-2019.

BEFORE:   DUBOW, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:          **FILED APRIL 12, 2021**

     Antwan M. Cooke appeals from the judgment of sentence imposed after

a jury convicted him of aggravated assault – attempt to cause serious bodily

injury.[1] After review, we affirm.

     Trial court's Rule 1925(a) opinion thoroughly addressed the factual

background:

> On January 25, 2019, Officer Michael Elezovic of the Lower
> Paxton Township Police Department was dispatched to [the
> complainant's address] for a domestic call. Upon arriving,
> he spoke with the [complainant] who showed him where the
> incident occurred inside the house. Officer Elezovic noted
> that the bedroom and bathroom, where the incident
> occurred, were in disarray. He further noted that the

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2702(a)(1). The trial court also found Cooke guilty for the
summary offense of criminal mischief. 18 Pa.C.S.A. § 3304(a)(3).

[complainant] had brush burns on her right triceps, a cigarette burn on her right bicep, and red marks on her chest. He did not see any bruising, but noted that bruising typically occurs a couple days later.

The [complainant] testified that she and [Cooke] were in a relationship for approximately 5 years. On or about August 23, 2018, [Cooke] moved into her home. [Cooke] lived with the [complainant] on and off for approximately 5 months.

On January 25, 2019, the [complainant] drove [Cooke] to an appointment in Mechanicsburg, and then returned to the [complainant's] home to get ready for her son's basketball tournament. According to the [complainant], [Cooke's] iPad was on the bed when she saw someone named Ashley trying to FaceTime him. [Cooke] was downstairs at the time, so the [complainant] went downstairs and asked him who Ashley was. [Cooke] responded that it was the same Ashley he had previously told her was like a sister to him. The [complainant] went back upstairs and started getting ready in the bathroom.

The [complainant] testified that [Cooke] came upstairs, laid on the bed for a moment, and then threw his cell phone (which was under the [complainant's] cell phone plan) stating, "I don't even want a phone." [Cooke] went back downstairs while the [complainant] continued getting ready. The [complainant] stated that at one point, she walked out of the bedroom and down the hallway when she encountered [Cooke] coming around the corner. [Cooke] pushed the [complainant] backwards into the door, took her phone, and went back downstairs. The [complainant] was upset and went into her bathroom and began crying. After composing herself, she went downstairs and told [Cooke] that she wanted to end the relationship. [Cooke] accepted it and planned on getting his stuff together and go to his brother's home. The [complainant] went back upstairs to the bathroom.

The [complainant] stated "when I came back out of the bathroom this time for something, he was coming into the bathroom where he grabbed me by my throat and pushed me across the sink" while yelling [ ]. The [complainant] attempted to call 911 from her work cell phone, but [Cooke] grabbed it and tried to break it. [Cooke] went downstairs

for a few minutes, and when he came back upstairs began packing her belongings in a garbage bag. The [complainant] yelled at him, asking why he was taking her stuff. [Cooke] spit on her, and she spit back at him. The [complainant] testified that [Cooke] dropped the bag and said "You know I have to kill you now, right?" She further testified:

> He grabbed me by my neck, he pushed me on the bed, he laid his body on top of mine. While he had his hands around my neck, he climbed his body on top of me. He reached over, he grabbed the pillow, he put it over my head and he would push down; and every time he would push down, he would yell, "Dies, little bitch; dies little bitch."

The [complainant] stated that she was unable to breath when [Cooke] had both of his hands around her neck, and it was even harder to breath when [Cooke] put a pillow over her face. She stated that she thought she would die if she did not fight back.

Fortunately, the victim was able to squirm to the end of the bed and fell on the floor. [Cooke] fell on top of her, so she grabbed his genitals and squeezed and twisted them, and then ran out of the house with her other cell phone while dialing 911. The [complainant] was on the phone with 911 as she was running through her neighbor's yard, with no socks or shoes on, and [Cooke] chasing her. [Footnote 6]

> [FN 6: The 911 recording was played for the jury and was admitted into evidence as Commonwealth's Exhibit 13.]

At some point, she heard [Cooke] on the phone behind her saying "Bro, make sure something happens to this fucking bitch."

After Officer Elezovic arrived, several photographs were taken of the [complainant's] injuries. The photographs were admitted into evidence at Commonwealth's Exhibit 5-12. The photographs show that at some point the [complainant] urinated herself, had brush burns on her right shoulder and arm, some scratches around her neck, a cigarette burn on her arm, and some scratching and early stages of bruising

on her back. There were also 2 photographs admitted and shown to the jury which were taken 4 days after the incident and the bruising was more prominent. The bruising apparently lasted 10-12 days and that her voice was [hoarse] for about a week or so.

After [Cooke] was arrested, he called the [complainant] several times from Dauphin County Prison, as well as sent her a letter dated February 7, 2019. The letter was admitted into evidence and read on the record. In the letter, [Cooke] asked the [complainant] to change her story when she testified and to say that they were both drinking so it would appear to be a mutual scuffle.

On cross-examination, it was revealed that the [complainant] and [Cooke's] "long-distance relationship" was because [Cooke] was incarcerated. The [complainant] knew she was not the only woman in [Cooke's] life, but knew [Cooke] wanted to live with her as part of his release plan. After [Cooke] was incarcerated on the instant charges, he made approximately 19 calls to the [complainant] between February 5 [through] 14, 2019. The two spent approximately 15 minutes on the phone each call, and the [complainant] put money on her phone so [Cook] could call her. Each time, the two ended the phone call by saying "I love you." On February 6, 2019, during a phone call, the [complainant] told [Cooke] that she was severely depressed and stated something along the lines of wanting to jump off a bridge. [Cooke] wrote the aforementioned letter the next day.

[Cooke] testified on his own behalf at trial. His version of events was substantially similar to the [complainant's] testimony. [Cooke] added that while he was packing up his PlayStation, the [complainant] swung at him, and when he stepped back she spit on him. "I wipe the spit off my face and I go back to messing with the PlayStation. *Now I'm really done. I'm mad. I'm mad.* I'm mad at the fact I just got spit on and stuff like that." [Emphasis added by the trial court.] [Cooke] testified that the victim swung at him again and this time connected. Notably, [Cooke] testified:

> So when she hit me…I didn't really care, but then she spit on me again, like spit on me. *So I grabbed her by her*

- 4 -

> ***arms...and threw her on the bed.***
> [Emphasis added by the trial court.] So while she was on the bed, like I'm like, "Bitch, you tripping. Like what the fuck is up with you? You tripping. You spitting on me. I'm leaving. Like chill the fuck out." Boom, boom, boom. And she is kicking, flailing, whatever.
>
> [Cooke] denied grabbing the [complainant] by the throat, but admitted to grabbing her by the arm on the edge of the bed. [Cooke] also denied punching, strangling, or grabbing a pillow and putting it over the [complainant's] face.
>
> In regard to the February 7, 2019 letter, [Cooke] testified that he wrote it because he was very upset that the [complainant] said she wanted to kill herself. He intended the letter to be comforting "like everything is going to be cool, like you don't got to – regardless of the facts and everything, I got feelings for her. So it is like don't like don't kill yourself." [Cooke's] preliminary hearing for the instant charges was held on February 8, 2019.

Trial Court Opinion, 7/2/20, at 1-7 (citations to the record omitted).

The court conducted a jury trial on February 11, 2020. The jury reconvened on February 12 and convicted Cooke of aggravated assault. Importantly, the jury acquitted Cooke of strangulation, theft by unlawful taking, and terroristic threats. The court sentenced Cooke to a term of incarceration for 5 ½ to 12 years. Cooke filed post-sentence motions, which were denied on April 7, 2020. This timely appeal followed.

Cooke asks us to review the following sufficiency and weight claims:

1. Did the trial court abuse its discretion in denying appellant's post-sentence motion, because the evidence presented at trial was insufficient to prove that [Cooke] committed the crime of Aggravated Assault where the allegation to support Aggravated

Assault was Strangulation and he was acquitted of that charge?

2. Whether the trial court abused its discretion in denying appellant's post-sentence motion because the jury verdict was so contrary to the weight of the evidence as to shock one's sense of justice when the Commonwealth failed to prove beyond a reasonable doubt that [Cooke] did commit an Aggravated Assault where the testimony was that he committed a Strangulation but was acquitted of that charge.

Cooke's Brief at 5.

We review Cooke's challenge to the sufficiency of the evidence under the following, well-settled standard of review:

> A claim challenging the sufficiency of the evidence presents a question of law. ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000). We must determine "whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt." ***Commonwealth v. Hughes***, 555 A.2d 1264, 1267 (Pa. 1989). We "must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the factfinder properly could have based its verdict." ***Id.***

***Commonwealth v. Fortune***, 68 A.3d 980, 983 (Pa. Super. 2013).

Our Supreme Court has instructed:

> [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the factfinder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

- 6 -

> ***Commonwealth v. Ratsamy***, 934 A.2d 1233, 1236 n.2
> (Pa. 2007).

***Commonwealth v. Thomas***, 65 A.3d 939, 943 (Pa. Super. 2013).

A person may be convicted of aggravated assault graded as a first degree felony if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). "Serious bodily injury" has been defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. For aggravated assault purposes, an "attempt" is found where an "accused who possesses the required, specific intent acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another." ***Fortune***, 68 A.3d at 984 (citation omitted). Intent ordinarily must be proven through circumstantial evidence and inferred from acts, conduct or attendant circumstances. ***Thomas***, 65 A.3d at 944. The test to determine whether a defendant acted with ***the necessary intent to sustain an aggravated assault conviction is the totality of the circumstances. See Fortune***, 68 A.3d at 984 (emphasis added).

In support of his first issue, Cooke argues the Commonwealth failed to prove all the necessary elements of aggravated assault "because the factfinder did not believe the assault or attempted assault took place." Cooke's Brief at

12. According to Cooke, "the only testimony of an assault that took place on January 25, 2019, was the allegation of strangulation." Cooke's Brief at 12.

In making this argument, Cooke fails to review the "totality of the circumstances" supporting his aggravated assault conviction. **Fortune**, **supra**. When so viewed, the trial court found the testimony and evidence adduced at trial was sufficient to support Cooke's conviction. The court explained:

> [The complainant] testified that [Cooke] pushed her into a door hard enough to create a hole in the wall from the door handle. Additionally, the [complainant] stated that [Cooke] grabbed her by the throat and pushed her across the sink. Although it is disputed who spit first, both the [complainant] and [Cooke] agree they spit on each other. As a result, the [complainant] testified that [Cooke] grabbed her by the neck, pushed her on the bed, got on top of her, and then grabbed a pillow and put it over her face. The [complainant] stated that she was unable to breathe and though she was going to die if she did not fight back. Additionally, [Cooke] testified that he grabbed the [complainant] by the arm and threw her on the bed[.]
>
> Fortunately, the [complainant] was able to escape. Officer Elezovic testified that he observed red marks on her chest, brush burn on her right triceps area, and a cigarette burn to her right bicep area. The [complainant] stated that she had bruising on her back and left arm for approximately ten (10) to twelve (12) days, her body was sore for several days, and she was hoarse for about a week.
>
> As the fact-finder, the jury had the benefit of hearing testimony from the [complainant] and [Cooke], as well as the ability to observe their respective demeanors in the courtroom. Additionally, the jury viewed photographs of the [complainant's] residence and injuries from the night of the incident, as well as some photographs from a few days later showing the bruising which emerged. It is clear that the jury listened carefully and considered the evidence and

> applicable law in reaching their verdict. Accordingly, the evidence presented at trial, along with all reasonable inferences derived therefrom, is sufficient beyond a reasonable doubt to sustain a conviction of aggravated assault.

Trial Court Opinion, 7/2/20. At 9-10 (citations to record omitted). Our review of the record supports the trial court's conclusion.

Cooke's claims to the contrary are unavailing. Cooke reasons that, because the jury acquitted him of strangulation, terroristic threats, and theft by unlawful taking, the jury must have determined that the complainant's version of events did not occur. And if the jury did not believe the violence happened, Cooke further reasons there is not sufficient evidence to show that the attempted violence occurred either. *See id.* at 12-13.[2]

Although he does not expressly characterize his first issue as such, Cooke is essentially arguing that the jury in his case rendered an inconsistent verdict, which "simply cannot stand." Cooke's Brief at 12 (citation omitted). We disagree.

For support, Cooke cites a single case, ***Commonwealth v. Magliocco***, 883 A.2d 479, 492 (Pa. 2005). In ***Magliocco***, the defendant was convicted for ethnic intimidation,[3] but was acquitted for making terroristic threats. The verdict was inconsistent, because the predicate offense of terroristic threats

---

[2] Cooke also cites the testimony of Officer Elezovic that he did not see any immediate injury to the complainant's neck. **See** Cooke's Brief at 14. This argument goes to the weight of the evidence, not sufficiency.

[3] 18 Pa.C.S.A. § 2710(a).

was a necessary element to an ethnic intimidation charge. This Court reversed the conviction. *See Commonwealth v. Magliocco*, 806 A.2d 1280 (Pa. Super. 2002) (emphasis added). Our Supreme Court agreed, explaining that, although the Commonwealth was not required to formally charge Magliocco with the predicate offense in order to convict him with ethnic intimidation, it chose to do so; and because Magliocco was actually acquitted of the predicate offense, the ethnic intimidation conviction must be vacated. *See Magliocco*, 883 A.2d at 492-493. "Given the special weight afforded acquittals, since the factfinder in this case specifically found that Magliocco did not commit the offense of terroristic threats, the conviction for ethnic intimidation, which requires as an element the commission beyond a reasonable doubt of the underlying offense, simply cannot stand." *Id.* at 493. Cooke concludes that this instant matter possesses the same "unusual circumstance." *See* Cooke's Brief at 14 (citing *Magliocco*).

However, Cooke's reliance on *Magliocco* is misplaced. There, the "unusual circumstance" necessitating a conviction's reversal was not merely the existence of an inconsistent verdict. Rather, the "unusual circumstance" was a situation "where [the predicate] crime is both separately charged and prosecuted and is also *a specific statutory element* of another charged offense." *See Magliocco*, at 492 (emphasis added). Conversely, in the instant matter, none of the crimes for which Cooke was acquitted – strangulation, terroristic threats, or theft by unlawful taking – is a specific

- 10 -

statutory element of aggravated assault. In essence, Cooke's argument is a distortion of our longstanding jurisprudence regarding inconsistent verdicts.

Our Courts have long understood: "a fact finder may render inconsistent verdicts," and "[a] jury's verdict in a criminal case will not be set aside merely because it appears to be inconsistent with another verdict of the jurors[, s]o long as the challenged verdict is supported by evidence." **See Commonwealth v. Taylor**, 471 A.2d 1228, 1231 (Pa. Super. 1984); **see also, e.g., Commonwealth v. Miller**, 35 A.3d 1206, 1209 (Pa. 2012) ("[T]he fact that the inconsistence [in the verdict] may be the result of lenity, coupled with the Government's inability to invoke review, suggests that inconsistent verdicts should not be reviewable.").

For instance, in **Miller**, the defendant was charged with, **inter alia**, first-, second-, and third-degree murder and robbery as the predicate offense for second-degree murder. The jury found the defendant guilty of second-degree murder but not guilty of robbery. Our Supreme Court let that disposition stand, distinguishing the matter from **Magliocco**: "[I]n contrast to the crime of ethnic intimidation [in Magliocco's case], second-degree murder does not require, **as an element of the crime**, the completion of the predicate offense." **Miller**, 35 A.3d at 1213 (emphasis added). The Supreme Court explained that **Magliocco** was grounded in the delineation of the elements of ethnic intimidation set forth in the text of that statute, and thus **Magliocco** is not generally applicable to convictions under other statutes. **Id.**

- 11 -

Similarly, in **Commonwealth v. Moore**, 103 A.3d 1240, 1249 (Pa. 2014), a defendant was charged with murder, attempted murder, and possession of an instrument of crime ("PIC"), *i.e.*, a gun.  Moore was acquitted of murder and attempted murder, but he was convicted of PIC.  This Court vacated the PIC conviction, but our Supreme Court reinstated the conviction: "Although [the defendant's] murder and attempted murder acquittals may be logically inconsistent with [his] PIC conviction," the Court reasoned, "in light of our enduring acceptance of inconsistent verdicts in Pennsylvania, we conclude that the acquittals are not grounds for reversal of [his] PIC conviction." **Moore**, 103 A.3d at 1250.   Again, the Supreme Court distinguished **Magliocco**, explaining that what drove the **Magliocco** analysis was the statutory elements of the ethnic intimidation charge, combined with the acquittal, and "not any factual inference drawn from the acquittal." **See Moore**, 103 A.3d at 1248.

Placing **Magliocco** in context, the **Moore** Court noted that **Magliocco** was not so much an "exception" to the inconsistent verdict jurisprudence, but a "largely idiosyncratic" sufficiency challenge "that, critically, [did] **not** entail jury inferences and so [was] not in conflict with the principle permitting inconsistent verdicts or its corollary that factual findings may not be inferred from a jury's acquittal." **Id.** at 1247-1248 (emphasis added).[4]  To that end,

_____

[4] Then-Justice Saylor even posited, "[A]fter **Miller**'s issuance it should be reasonably clear that **Magliocco** has been effectively limited to its facts. **Moore**, 103 A.3d at 1251 (Saylor J., Concurring).

we emphasize **Moore**'s pronouncement "that reviewing courts may not draw factual inferences in relation to the evidence from jury's decision to acquit a defendant of a certain offense." **Id.** at 1249.

This is precisely what Cooke asks us to do. Cooke reasons:

> [T]he jury dismissed [the complainant's] claims that [Cooke] stole her cell phone, told her to die, and held a pillow over her heard with such force that she could not breath by finding him not guilty of Terroristic Threats, Theft by Unlawful Taking, and Strangulation. Therefore, the Commonwealth did not meet its burden on that element of [Aggravated Assault – attempt to cause bodily injury].

Cooke's Brief at 14.

The only way we could bridge the gap in Cooke's logic would be if we erroneously drew factual inferences from the jury's acquittals. And even if we could, we would question whether the jury's verdicts were actually inconsistent. It is quite logical for a jury to conclude that a defendant was not guilty of strangling[5] a victim, insofar as the act was not fully accomplished, but nevertheless guilty of the attempt to commit the act; just as easily, a jury could find that a defendant's threats, though not intended to terrorize[6] the

_____

[5] "A person commits the offense of strangulation if the person knowingly or intentionally impedes the breathing or circulation of the blood of another person by: applying pressure to the throat or neck; or blocking the nose and mouth of the person." 18 Pa.C.S.A. § 2718(a).

[6] "A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to commit any crime of violence with the intent to terrorize another." 18 Pa.C.S.A. § 2706(a)(1).

- 13 -

victim, were nevertheless uttered during the commission of an assault; and that a defendant may have assaulted a victim without necessarily taking[7] her phone. We ultimately conclude Cooke's sufficiency claim is meritless.

Turning now to Cooke's second issue, we address whether his aggravated assault conviction was against the weight of the evidence.

Initially, we note that, his argument in support of this issue conflates a challenge to the sufficiency and weight of the evidence supporting a conviction. As our Supreme Court explained in **Widmer**, **supra**:

> [It is] necessary to delineate the distinctions between a claim challenging the sufficiency of the evidence and a claim that challenges the weight of the evidence. The distinction between these two challenges is critical. A claim challenging the sufficiency of the evidence, if granted, would preclude retrial under the double jeopardy provisions of the Fifth Amendment to the United States Constitution, and Article I, Section 10 of the Pennsylvania Constitution, whereas a claim challenging the weight of the evidence if granted would permit a second trial.
>
> ***
>
> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than

---

[7] "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S.A. § 3921(a).

- 14 -

reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 560 Pa. 308, 319-20, 744 A.2d 745, 751-52

(2000) (citations and footnote omitted).

Moreover, appellate review of a weight claim is highly deferential: "When reviewing the weight of the evidence, we review 'the trial court's exercise of discretion.'" *Commonwealth v. Roane*, 204 A.3d 998, 1001 (Pa. Super. 2019) (citation omitted). "We give great deference to the trial court's decision regarding a weight of the evidence claim because it "had the opportunity to hear and see the evidence presented." *Id.*

Here, the trial court rejected Cooke's challenge to the weight of the evidence supporting his aggravated assault conviction:

In the instant case, the weight of the evidence fully supports the jury's findings. Both the [complainant] and [Cooke] testified as to their version of events. As the fact-finder, the jury was heard all of the evidence, viewed the photographs, and observed their demeanors in the court room. Based on this testimony, the jury clearly believed that [Cooke] attempted to cause serious bodily injury to the [complainant]. This [c]ourt finds that the verdict was not contrary to the weight of the evidence to the degree of shocking one's conscious. Therefore, this [c]ourt did not err in denying [Cooke's] post-sentence motion for a new trial based on a challenge to the weight of the evidence.

Trial Court Opinion, 7/2/20, at 11.

- 15 -

We discern no abuse of discretion. Here, Cooke presents no pertinent legal authority to support his claim. Rather, he merely reiterates that because the strangulation charged failed, so must the aggravated assault conviction. *See* Cooke's Brief at 15. As noted above, a true weight claim concedes the sufficiency of the evidence supporting a conviction. *Widmer*, *supra*.

Additionally, Cooke argues, quite dubiously, that the only injuries the complainant sustained were the ones Cooke inflicted in self-defense. Cooke's Brief at 15. These injuries included scratches around the complainant's neck and back, and early stages of bruising on her back, shoulder and arm, which became more pronounced in the days following the assault. *See* Commonwealth's Exhibits 5-12. The complainant also testified that her voice was hoarse for about a week.

When tasked with resolving contradictory testimony, "the weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses." *Roane*, 204 A.3d at 1001 (citation omitted). In light of this directive, the trial court did not abuse its discretion in denying Cooke's motion for a new trial. Thus, Cooke's second issue fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>04/12/2021</u>