COMMONWEALTH of Pennsylvania, Appellee

v.

Aziz FORTUNE, Appellant.

Superior Court of Pennsylvania.

Argued April 9, 2013.
Filed May 31, 2013.

---

Karl Baker, Public Defender and Isla A. Fruchter, Public Defender, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney and Priya M. Travassos, Assistant District Attorney, Philadelphia, for appellee.

BEFORE: STEVENS, P.J., FORD ELLIOTT, P.J.E., BOWES, J., GANTMAN, J., PANELLA, J., SHOGAN, J., LAZARUS, J., MUNDY, J., and OTT, J.

OPINION BY STEVENS, P.J.

Aziz Fortune (hereinafter "Appellant") appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County on March 11, 2011, at which time he received an aggregate sentence of six (6) years to twelve (12) years in prison following his conviction for Robbery of motor vehicle and Aggravated Assault.[1] Upon our review of the record, we affirm.

The trial court aptly set forth the facts herein as follows:

On November 15, 2009[,] at approximately 6:15 in the morning, [the victim] was on her way to work at an elder care facility and needed to stop for gas. She pulled her Ford Expedition up to a gas station at 6501 Buist Avenue in Philadelphia. When she got out of the car she saw [Appellant] standing in the parking lot. [Appellant] approached her [and] asked her if she had a cigarette; [the victim] replied that she did not smoke and [Appellant] walked away.

As [the victim] was finishing pumping gas, [Appellant] walked in front of the

---

**1.** 18 Pa.C.S.A. § 3702; 18 Pa.C.S.A. § 2702(a)(1), respectively.

car. When [the victim] looked up after closing the gas tank on her car, [appellant] was standing directly in front of her and had a gun pointed at the middle of her forehead. [Appellant] told [the victim], "Let go of the keys. If you don't let go of the keys, I'm going to blow your head off." [The victim] let go of her keys and ran.

[The victim] flagged down a passing motorist about a block down the street, who called the police for her. [The victim] went to the police station where she was interviewed by Detective [Francis] Sheridan. [The victim] was at that time shown images on a computer based on the information she gave Sheridan. [The victim] viewed over eight hundred photographs and did not make any identifications at that time.

The Ford Expedition was recovered a short time later on the 5600 block of Gibson Avenue by Philadelphia Police. That block is approximately a five minute drive from the gas station on 6501 Buist Avenue. Detective Francis Sheridan processed the car after it was brought to Southwest Detectives. This process included dusting the interior and exterior of the car for fingerprints. He found latent prints on the outside of the driver-side door of the car, which he lifted and forwarded to be analyzed.

Clifford Parson, a fingerprint examiner for the City of Philadelphia, received the cards containing the latent prints and analyzed them. He scanned the latent prints into a computer and received a positive identification to [Appellant] when he scanned the latent print lifted from the driver['s] side door of the victim's recovered Ford Expedition. Parson also did a side-by-side analysis of the prints and concluded that they were [Appellant's].

After receiving this information from the fingerprint analysis lab, Detective Sheridan prepared a paper photo array with [Appellant's] photo in it. Detective Sheridan called the victim on November 16[, 2009] and arranged to meet [the victim] at her job on City Avenue in Philadelphia so she could view a photo array.

Detective Sheridan and his partner, Detective Kerwin, arrived to meet [the victim] and asked her to look at the photo array. Detective Kerwin told [the victim] that the person who robbed her may or may not be in the photo array. [The victim] identified [Appellant] as the person who put a gun to her face and took her car. [The victim] remembered his "beard, lips, and jaw."

[The victim's] Ford Expedition was later returned to her. She noted that the truck had a scrape on it that was not there before [Appellant] robbed her. While her dirty laundry and purse were still in the truck, several items were missing, including nine hundred dollars in cash from [the victim's] purse, a T–Mobile smartphone, a laptop, and a winter coat. [The victim] never received these items back.

Trial Court Opinion, 10/31/11 at 1–3 (citations to notes of testimony omitted).

Following a trial held on December 14, 2010, the jury convicted Appellant of Aggravated Assault and Robbery of a motor vehicle but found him not guilty on the firearms charges. On March 11, 2011, Appellant was sentenced to five (5) years to ten (10) years' imprisonment on the Robbery conviction and to a concurrent term of six (6) years to twelve (12) years' imprisonment on the Aggravated Assault conviction. Appellant filed a timely appeal and complied with the trial court's order to file a concise statement of errors com-

plained of on appeal pursuant to Pa.R.A.P. 1925(b).

In his appellate brief, Appellant presented one issue for review:

> THE EVIDENCE WAS INSUFFICIENT TO CONVICT APPELLANT OF AGGRAVATED ASSAULT, ATTEMPT TO CAUSE SERIOUS BODILY INJURY, INSOFAR AS APPELLANT'S CONDITIONAL THREAT DID NOT INDICATE A PRESENT INTENT TO INJURE, SERIOUSLY OR NOT.

Appellant's Brief at ii.

In a Memorandum Decision filed on October 10, 2012, a panel of this Court reversed Appellant's conviction and judgment of sentence for Aggravated Assault, vacated his judgment of sentence for Robbery and remanded for resentencing on the Robbery conviction. Thereafter, on December 20, 2012, that Memorandum was withdrawn in this Court's *Per Curiam* Order which also granted a rehearing *en banc*.[2]

In his "Substituted Brief on *En Banc* Reargument," Appellant raises the following "Statement of the Questions Involved":

> Was not the evidence insufficient to convict [A]ppellant of aggravated assault as a felony of the first degree, where the evidence in totality showed that [A]ppellant pointed a gun at the complainant but made no attempt to cause serious bodily injury and lacked the present intent to do so?

Substituted Brief for Appellant on *En Banc* Reargument at 4.

We review Appellant's challenge to the sufficiency of the evidence under the following, well-settled standard of review:

> A claim challenging the sufficiency of the evidence presents a question of law. *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000). We must determine "whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt." *Commonwealth v. Hughes*, 521 Pa. 423, 555 A.2d 1264, 1267 (1989). We "must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict." *Id.*

Our Supreme Court has instructed:

> [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Moreover,

---

**2.** The Order further provided that each party shall either refile the brief it had previously filed together with a supplemental brief, if desired, or prepare and file a substituted brief. Both Appellant and the Commonwealth have chosen to do the latter. As such, we note that a panel of this Court has concluded that on reargument, a petitioner may raise any issue in a supplemental or substituted brief that could have been raised before the original panel. In doing so, the panel stressed prior appellate court decisions that indicate scope limitations on the issues to be considered are recognized when included ei-

ther in a Supreme Court remand order or in this Court's order granting reargument. The panel cited to *ABG Promotions v. Parkway Publishing, Inc.*, 834 A.2d 613, 615 n. 2 (Pa.Super.2003) wherein this Court considered only those issues designated by it in the order granting *en banc* review and to Pa. R.A.P. 2546(b) in support of this statement. *R.W.E. v. A.B.K.*, 961 A.2d 161, 171 (Pa.Super.2008). Herein, this Court did not designate any specific issue in granting *en banc* review, and Appellant, in essence, raises the same issue he initially raised on appeal.

in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. *Commonwealth v. Ratsamy*, 594 Pa. 176, 934 A.2d 1233, 1236 n. 2 (2007).

*Commonwealth v. Thomas*, 65 A.3d 939, 943 (Pa.Super. 2013).

■ A person may be convicted of Aggravated Assault graded as a first degree felony if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). "Serious bodily injury" has been defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. For aggravated assault purposes, an "attempt" is found where an "accused who possesses the required, specific intent acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another." *Commonwealth v. Gray*, 867 A.2d 560, 567 (Pa.Super.2005), *appeal denied*, 583 Pa. 694, 879 A.2d 781 (2005). An intent ordinarily must be proven through circumstantial evidence and inferred from acts, conduct or attendant circumstances. *Thomas*, 65 A.3d at 944, 2013 WL 1319796, at *4.

The Pennsylvania Supreme Court in *Commonwealth v. Alexander*, 477 Pa. 190, 383 A.2d 887 (1978) created a totality of the circumstances test to be used to evaluate whether a defendant acted with the necessary intent to sustain an aggravated assault conviction. In *Commonwealth v.*

*Matthew*, 589 Pa. 487, 909 A.2d 1254 (2006), that Court reaffirmed the test and articulated the legal principles which apply when the Commonwealth seeks to prove aggravated assault by showing that the defendant attempted to cause serious bodily injury. Specifically, the Court stated, in relevant part, that:

> *Alexander* created a totality of the circumstances test, to be used on a case-by-case basis, to determine whether a defendant possessed the intent to inflict serious bodily injury. *Alexander* provided a list, albeit incomplete, of factors that may be considered in determining whether the intent to inflict serious bodily injury was present, including evidence of a significant difference in size or strength between the defendant and the victim, any restraint on the defendant preventing him from escalating the attack, the defendant's use of a weapon or other implement to aid his attack, and his statements before, during, or after the attack which might indicate his intent to inflict injury. *Alexander*, at 889. *Alexander* made clear that simple assault combined with other surrounding circumstances may, in a proper case, be sufficient to support a finding that an assailant attempted to inflict serious bodily injury, thereby constituting aggravated assault.

*Matthew*, 909 A.2d at 1257 (citation and quotation marks omitted). The Court indicated that our case law does not hold that the Commonwealth never can establish a defendant intended to inflict bodily injury if he had ample opportunity to inflict bodily injury but did not inflict it. Rather, the totality of the circumstances must be examined as set forth by *Alexander*. *Id.*

In the matter *sub judice*, there is no question that Appellant's actions did not cause the victim to sustain actual, serious bodily injury; therefore, Appellant's con-

viction for Aggravated Assault turns exclusively on whether he attempted to inflict serious bodily injury upon the victim. In this regard, this Court has stated the following:

Where the victim does not suffer serious bodily injury, the charge of aggravated assault can be supported only if the evidence supports a finding of an attempt to cause such injury. "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a). An attempt under Subsection 2702(a)(1) requires some act, albeit not one causing serious bodily injury, accompanied by an intent to inflict serious bodily injury. *Commonwealth v. Matthew*, 589 Pa. 487, 909 A.2d 1254 (2006). "A person acts intentionally with respect to a material element of an offense when ... it is his conscious object to engage in conduct of that nature or to cause such a result[.]" *Id.* at 1257–58 (quotation omitted). "As intent is a subjective frame of mind, it is of necessity difficult of direct proof." *Id.* (citation omitted). The intent to cause serious bodily injury may be proven by direct or circumstantial evidence. *Id.*

*Commonwealth v. Martuscelli*, 54 A.3d 940, 948 (Pa.Super.2012) (emphasis added).

While Appellant acknowledges that he threatened the victim while pointing a gun at her, he posits that "the facts and circumstances of the case show that the threat was a conditional one, made with the intent only to steal her car, rather than indicative of intent to cause her serious bodily injury, as demanded by the statute." Appellant further notes that the Commonwealth presented no proof that the weapon was loaded, that it never came in contact with the victim, and that when she dropped the keys as Appellant had de-

manded, "he released her and left the scene without any further action." Substituted Brief for Appellant on *En Banc* Reargument at 7. Appellant relies upon *Commonwealth v. Bryant*, 282 Pa.Super. 600, 423 A.2d 407 (1980) and *Commonwealth v. Alford*, 880 A.2d 666 (Pa.Super.2005), *appeal denied*, 586 Pa. 720, 890 A.2d 1055 (2005) for the proposition that the mere act of pointing a gun at another in a threat to cause serious bodily injury, without more, does not constitute aggravated assault.

In *Bryant*, the defendant and an accomplice forcibly entered an apartment occupied by five individuals. One of the assailants pointed a gun at two of the victims after which the assailants demanded drugs and money from the occupants and threatened to kill them if they were not forthcoming. *Id.*, at 408–409. This Court ultimately concluded an assailant's act of kicking one of the victims of the robbery and throwing another to the ground was sufficient to support only a conviction for simple assault under 18 Pa.C.S.A. § 2701(3). *Id.*, at 410–41. As such, two of the defendant's aggravated assault convictions were modified to simple assault convictions. *Id.*, at 411.

In *Alford*, the appellant escaped a constable's custody while being transported to the county jail. After removing the constable's firearm from its holster and pistol-whipping him, the appellant fled to a nearby neighborhood where he pounded on the front door of a woman's home. The victim did not allow him to enter her home. The appellant pointed the stolen gun at the victim through the front window, though the victim was able to run away immediately. *Alford*, 880 A.2d at 668–669. On appeal, a panel of this Court found that the evidence was sufficient for appellant's conviction of aggravated assault as a first-degree felony as to the constable, but held

that the evidence was insufficient to prove that appellant had the specific intent to cause serious bodily injury to the victim under Section 2701(a)(1) of the aggravated assault statute. In making this determination, we stated that "merely pointing a gun at another person in a threat to cause serious bodily injury alone does not constitute an aggravated assault." *Id.* at 671 (citation omitted).

In its brief the Commonwealth relies upon our Supreme Court's holding in *Matthew, supra,* in support of its argument that Appellant's act of pointing a gun at the victim's forehead while simultaneously threatening to "blow [her] head off," during the course of a carjacking sufficiently demonstrated the necessary substantial step and *mens rea* for the specific intent to cause serious bodily injury. Substituted Brief for the Appellee *En Banc* Reargument at 12. In *Matthew,* a good Samaritan had stopped to help the appellant whose car had just crashed after he lost control of it on Interstate 95. Just prior to the crash, the appellant, an employee at a shoe store, had hit his supervisor with his car after the latter confronted him about boxes of shoes in the car for which appellant refused to produce receipts. Appellant, thinking the victim was a police officer, pushed a loaded gun into his chest. Appellant proceeded to search the car frantically while continuing to point the gun at the victim and when a second passerby stopped threatened to kill him. *Matthew,* 909 A.2d at 1256–1257.

After re-affirming that the *Alexander* test is the proper one for determining whether there is sufficient evidence to convict a defendant of aggravated assault graded as a first degree felony, our Supreme Court found sufficient evidence had been presented for the fact-finder to conclude the appellant possessed the intent to inflict serious bodily injury upon the victim simply in light of his threats to kill the victim. *Id.* at 1259. The Court further found that if those threats alone had not been enough to establish the appellant's intent, "the fact-finder could determine his intent from pushing the loaded gun against [the victim's] throat and otherwise pointing it at him." *Id.*

■ In the matter *sub judice,* Appellant appeared before the victim without warning, pointed a gun at the middle of her forehead, demanded her keys, and threatened to "blow [her] head off" if she did not comply. The victim indicated that Appellant grasped one end of keys while she held a key in her hand. N.T., 12/14/10, at 7. She also estimated that the gun was less than a half inch from the area between her eyebrows at the time. N.T., 12/14/10, at 9–10. Under such circumstances, Appellant was not "merely pointing" the gun at the victim while making a conditional threat. Rather, his simultaneous demand to her to act was direct and uttered while he constantly pointed his weapon squarely at a vital part of her body and while he was holding the opposite end of the keys that were also still in her hand. As such, we find there was sufficient evidence from which a jury could have found that Appellant attempted to cause serious bodily injury upon the victim.

■ We further find there was sufficient evidence from which the jury could have concluded that Appellant took a substantial step towards inflicting serious bodily injury since he pointed a gun at the middle of the victim's forehead, threatened to kill her, and did not do so only because the victim fled. *See Matthew, supra* (finding a substantial step to inflict serious bodily injury had been taken where the appellant pushed a loaded gun against the victim's throat, threatened to kill him, and pointed it at him before fleeing the scene). "The only remaining step [A]ppellant

would have had to take to inflict serious bodily injury upon [the victim] would have been to pull the trigger on the gun, which would have obviously caused serious bodily injury."[3] *Matthew*, 589 Pa. at 494, 909 A.2d at 1259 (citation omitted).

■ Moreover, we hold there was sufficient evidence for the jury to conclude Appellant possessed the requisite intent to inflict serious bodily injury upon the victim when he threatened to "blow her head off." As was the case in *Matthew*, if this threat alone had not been enough to establish his intent, the jury properly could have determined it from his pointing of the gun at the middle of her forehead during the car-jacking. *Matthew*, 909 A.2d at 1259 ("Where the intention of the actor is obvious from the act itself, the [fact-finder] is justified in assigning the intention that is suggested by the conduct.") (quotation omitted).

Under the totality of the circumstances, the jury certainly was free to find, *inter alia*, that Appellant intended to carry out his threat but did not do so for a variety of reasons. The fact the victim managed to drop her keys and successfully escape does nothing to negate a finding that Appellant possessed the proper *mens rea* at the time he pointed the gun at the victim. In sum, in applying the totality of the circumstances approach as *Matthew* dictates, we find Appellant's claim there was insufficient evidence to sustain his conviction for Aggravated Assault must fail.

Judgment of sentence affirmed.

**3.** The jury was free to infer the gun was loaded in this case.

**1.** The author has always believed that the nomenclature used in these sections is the true root of the problem. An "assault" that is "simple" seems almost benign, a mere annoyance, akin to being bumped by a boisterous

FORD ELLIOTT, P.J.E. FILES A DISSENTING OPINION IN WHICH SHOGAN, J. AND LAZARUS, J. JOIN.

DISSENTING OPINION BY FORD ELLIOTT, P.J.E.:

I must respectfully dissent from the Majority's affirmance of appellant's aggravated assault conviction. I believe appellant was properly convicted of robbery and should stand convicted of the crime of simple assault.

Appellant's actions in car-jacking the victim are truly reprehensible and subject to severe punishment. He held a gun to the victim's head and demanded her car keys or he would "blow her head off." There can be no doubt that the victim was placed in fear of imminent serious bodily injury. Without doubt, appellant's actions constitute the crime of robbery, a first degree felony. For obvious reasons, appellant does not challenge his robbery conviction on appeal for which he received 5–10 years' imprisonment. Rather, appellant asks this court to determine if the evidence was sufficient to find him guilty of the additional crime of aggravated assault for which he received a concurrent term of 6–12 years. Appellant asserts that his actions constituted a simple assault.

The distinction between the crimes of simple and aggravated assault has vexed our appellate courts for years, and as addressed by the Majority, the determination often rests on a laborious examination of the facts of any given case. One commentator has remarked the root of this consternation may be in the nomenclature.[1]

fellow customer waiting with us in a check out line. The use of fists or weapons, accompanied and preceded by harsh words and vile epithets, is a circumstance that every reasonably genteel person would see as an "aggravated" one, regardless of the outcome.

In truth, of course, a "simple" assault is a serious matter. A victim suffering "impair-

The crime of simple assault is anything but simple. It is a serious crime, which either causes bodily injury to another or attempts to cause by physical menace to put another in fear of imminent serious bodily injury. Such an assault is punishable by a sentence of up to two years. Aggravated assault on the other hand, for the purposes of the facts of this case, requires a showing that appellant actually attempted to cause serious bodily injury to another.

It has long been the law in this Commonwealth that the mere pointing of a gun at another in a threatening manner, without more, does not constitute aggravated assault but rather simple assault directed at putting another in fear of imminent serious bodily injury. *Commonwealth v. Alford*, 880 A.2d 666 (Pa.Super.2005), *appeal denied*, 586 Pa. 720, 890 A.2d 1055 (2005) (merely menacing another with a gun, without discharging a weapon or without some other indicia manifesting intent, is insufficient to demonstrate an intent to inflict serious bodily harm; Alford's words and actions constituted a conditional threat), citing *Commonwealth v. Savage*, 275 Pa.Super. 96, 418 A.2d 629, 632 (1980) ("pointing a gun at Mr. Gould ... in ... a threat to cause serious bodily injury, could constitute a simple assault as an 'attempt by physical menace to put another in fear of imminent serious bodily injury.' ... It could not, however, constitute an aggravated assault.").

There is little question that had appellant fired the gun at the victim, an aggra-vated assault would have been the result. However, that is not what happened here. To constitute an attempt under the statute, evidence must be presented that appellant had the specific intent to cause serious bodily injury and took a substantial step toward perpetrating serious bodily injury on the victim. The specific intent element of aggravated assault requires that a person presently intended to cause the harm that would occur if he fired the gun. "Where the defendant is charged with aggravated assault based upon his attempt to injure another person, the Commonwealth is required to prove that he acted with a specific intent to cause such injury." *Commonwealth v. Sanders*, 426 Pa.Super. 362, 627 A.2d 183, 186 (1993). As discussed by the Majority, our Supreme Court has instructed that under the facts of a case such as this, we must look to the totality of the surrounding circumstances to establish if the defendant had that specific intent. *See Commonwealth v. Matthew*, 589 Pa. 487, 492, 909 A.2d 1254, 1257 (2006); *Commonwealth v. Alexander*, 477 Pa. 190, 194, 383 A.2d 887, 889 (1978).

The Majority appropriately relies upon the decision in *Matthew* that affirmed the result of this court's *en banc* decision. However, I find the facts and totality of the circumstances of the *Matthew* case to be far more egregious than this case. In *Matthew*, the victims were presented with a deranged gun-wielding individual making numerous threats and taking substantial steps in an attempt, for no other reason than, to cause them harm.

ment of physical condition or substantial pain" is the victim of more than an annoying jostling, and a defendant serving a 1–2 year sentence must realize that his offense was hardly "simple."

Perhaps it is that aggravated assault penalties are so disparate and draconian when compared to simple assault that we tend to downplay the significance of the simple assault charge. There is a world of difference between the M–2 simple assault and the F–1 version of § 2702(a)(1). Still, had only the Legislature used "First Degree Assault" and

"Second Degree Assault," I am reasonably sure this would have been less of a problem.

Bruce A. Antkowiak, *Five Hot Topics: Issues of Pending Concern in Pennsylvania's Appellate Courts*, 42 Duq.L.Rev. 411 (2004), n. 66.

With respect to appellant, the Superior Court properly found there was sufficient evidence to find appellant attempted to inflict serious bodily injury upon Wachter, and intended to do so. Appellant placed a loaded gun against Wachter's throat, repeatedly pointed it at him, and threatened to kill him seven to ten times.

*Matthew, supra* at 494, 909 A.2d at 1258.

It is also worth noting that this court's *en banc* decision in *Matthew*, which this writer joined, specifically overruled *Commonwealth v. Mayo*, 272 Pa.Super. 115, 414 A.2d 696 (1979), and *Commonwealth v. Repko*, 817 A.2d 549 (Pa.Super.2003), as creating an "ample opportunity" test. This court decided that *Mayo* and *Repko* improperly relied on the fact that the defendant failed to follow through on his threats as determinative of whether an aggravated assault occurred. *Commonwealth v. Matthews*, 870 A.2d 924, 932 (Pa.Super.2005) (*en banc*).[2] The Supreme Court in *Matthew* specifically disapproved of this analysis, finding that both *Mayo* and *Repko* properly applied a totality of the circumstances approach to the facts in each case as required by *Alexander, supra*. The failure of the defendant to follow through on the harm threatened was but one factor for consideration. *Matthew, supra* at 492–493, 909 A.2d at 1258.

The Superior Court incorrectly concluded *Mayo* and [*Commonwealth v. Gruff*, 822 A.2d 773 (Pa.Super.2003)], illustrate "two distinct and irreconcilable approaches" towards interpreting what is required to be proven for aggravated assault. *Matthews*, at 930. In *Mayo*, the Superior Court held there was insufficient evidence for the fact-finder to convict the defendant of aggravated as-

sault under § 2702(a)(4) where the defendant placed a knife at the victim's throat, suggested he could kill her with it, and inflicted light scratches on the victim's chest that did not draw blood. *Mayo*, at 698, 703–04. *Mayo* referred to *Alexander*, quoting its multi-factor analysis. *Id.*, at 703, 383 A.2d 887 (quoting *Alexander*, at 889). *Mayo* determined that while "[the defendant] was certainly more physically powerful than his victim, and at least suggested the possibility of her death, we view the crucial fact to be his failure to pursue his obvious opportunity to inflict considerable pain or injury on [the victim]." *Id. Mayo* found the defendant's actions "all point decisively to an intent not to inflict bodily injury . . . ." *Id.*

*Mayo* followed the totality of circumstances test set forth in *Alexander*. *Mayo* did not hold the Commonwealth can never establish a defendant intended to inflict bodily injury if he had ample opportunity to inflict the injury, but did not inflict it. *Mayo* only found the defendant's decision not to inflict the bodily injury was the "crucial fact" in that case.[Footnote 7] Had *Mayo* stated such a sweeping pronouncement, it would have been incorrect, and insofar as it may be interpreted as doing so, it is disapproved.

---

[Footnote 7]. The Superior Court described [*Repko*,] (verbal and physical action of pointing gun at victim insufficient to establish aggravated assault), as endorsing the *Mayo* "ample opportunity" test. *Matthews*, at 931. *Repko* did not adopt an ample opportunity test, but found the factual scenario before it was more akin to *Mayo* than other case law. *Repko*, at 556

---

2. The Superior Court's opinion refers to appellant as "Matthews." The Supreme Court noted that their review of the record, includ-

ing appellant's brief, reveals appellant's last name is "Matthew." *Matthew*, 589 Pa. at 490 n. 1, 909 A.2d at 1256 n. 1.

*Matthew,* 589 Pa. at 492–494, 909 A.2d at 1258–1259 (footnote 6 omitted).

Returning to the facts of this case, clearly appellant's intent was to rob the victim of her car. His pointing the gun at her and threatening to shoot her if she did not relinquish her keys were directed at stealing her car, not at specifically intending to cause her serious bodily injury. When she gave up her keys, he left with the car, which was his purpose all along. Without doubt, appellant put the victim in fear of imminent serious bodily injury, and perpetrated an assault under Section 2701(a)(3).[3] There is no evidence to suggest that appellant's intent was anything other than to take the victim's vehicle. His words and actions did not evidence a substantial step toward causing serious bodily injury. At most, appellant's words and actions constituted a conditional threat, which is insufficient to prove aggravated assault. *See Savage,* 418 A.2d at 632, citing *Commonwealth v. Bryant,* 282 Pa.Super. 600, 423 A.2d 407 (1980). Under the totality of the circumstances of this case, I cannot distinguish this case from the analysis in *Mayo, Repko, Bryant, Savage,* or *Alford* and would find that the evidence rises no higher than simple assault during the perpetration of a robbery.

Finally, the Majority relies on the fact that the jury was certainly free to infer the intent of appellant from his pointing the gun at the middle of the victim's forehead during the carjacking and that he intended to carry out his threat but did not do so for a variety of reasons. While it is clearly the fact-finder's province to assess the evidence and draw proper inferences therefrom, we do not defer to the jury when the evidence is insufficient as a matter of law.

In reviewing a sufficiency challenge, a court determines, whether the evidence, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In this sufficiency challenge we are asked to determine what constitutes aggravated assault under 18 Pa.C.S. § 2702(a)(1). Thus, this is a question of law. For questions of law, our scope of review is plenary and our standard of review is *de novo.*

*Matthew, supra* at 491, 909 A.2d at 1256–1257 (citations omitted).

For all of the above reasons, I respectfully dissent to the Majority's affirmance of the aggravated assault charge under the totality of the facts

---

**3.** As set forth in the Official Comment to § 2701, "Subsection (a)(3) covers the situation when the actor intends to frighten even though he does not intend, or lacks ability, to commit a battery." and circumstances of this case.