J-A26015-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| KURT WINS | : | |
| Appellant | : | No. 2134 EDA 2021 |

Appeal from the Judgment of Sentence Entered October 8, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000822-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| KURT WINS | : | |
| Appellant | : | No. 2135 EDA 2021 |

Appeal from the Judgment of Sentence Entered October 8, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000823-2020

BEFORE: BOWES, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:                **FILED DECEMBER 9, 2022**

Kurt Wins appeals from the October 8, 2021 judgments of sentence which imposed an aggregate sentence of six to fifteen years of imprisonment stemming from convictions at the above captioned docket numbers. We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

The trial court offered the following summary of the facts underlying Appellant's convictions:

Nadia Butler was married to Appellant in May of 2019. They had been together for about two years prior to the marriage. After the marriage they were together for approximately nine months, before separating, then briefly getting back together. They have only one child together, [who Ms. Butler was seven months pregnant with at the time the events for which Appellant was charged took place]. . . . They were . . . divorced by early January 2020.

Around New Year's 2020, Ms. Butler received a call from a woman she knows as Latoya, who she described as Appellant's godmother or "play mom." On January 3, 2020, Ms. Butler went to Latoya's home on Bouvier Street in Philadelphia. As Ms. Butler came around the corner near Latoya's [residence], she spotted Appellant sitting on the steps, talking on the phone. As Ms. Butler turned to leave, Appellant grabbed her by the hair and punched her in the face.

At that point a woman named Geneva, . . . then-current girlfriend of Appellant, arrived on the scene in a vehicle. She jumped out and joined Appellant in hitting Ms. Butler, including holding Ms. Butler down as Appellant repeatedly kicked her in the stomach. . . . As Appellant was kicking Ms. Butler, he threat[en]ed to kill her and her baby. Appellant had a gun, with which he struck Ms. Butler in the face. At one point a bystander attempted to intervene and assisted Ms. Butler. During the incident, Appellant took Ms. Butler's pocketbook, money, and various cards and identification.

At some point[,] Officer Brandon Dugan responded to a radio call and met Ms. Butler at West Erie and North Bouvier. He observed her to be very distraught and upset. He observed visible marks under and around her right eye . . . . Ms. Butler subsequently spoke with [Detective Curtis Matthews who] took photographs of Ms. Butler's injuries, including of abrasions on her belly.

On January 8, 2020, Ms. Butler was leaving a girlfriend's house, headed toward her grandmother's [home], when she

encountered Appellant at the intersection of Erie and Bouvier in Philadelphia, at about 1:00 AM. Appellant came up behind Ms. Butler, grabbed her by the hair, swung her around by her hair, struck her in the head with a gun, and struck her repeatedly in the face and upper body. Appellant then threat[en]ed to kill Ms. Butler. . . . Ms. Butler broke free and was running away when she heard two gunshots. She then felt the bullet which grazed her leg.

Following the incident Ms. Butler met with Police Officer Shawn Ciaurro, who responded to the scene based on a radio call. Ms. Butler told the officer she had been hit in the head. After speaking with Ms. Butler, Officer Ciaurro transported her to the Detective Division, where she met with Detective [William] Lackman. The detective took photographs of some of her injuries. Ms. Butler told Detective Lackman about Appellant possessing a gun and a shot being fired, as a result of which he canvassed the scene looking for evidence of a gunshot. Either before or after meeting with Detective Lackman, Ms. Butler went to Temple Hospital where she was examined, treated and released. The medical records show that at Temple Ms. Butler complained that she had been pistol-whipped, hit in the head, and fell on her wrist and knee. The medical examination showed positive for headaches and loss of consciousness, no facial trauma or abrasions, no other abrasions or lacerations.

[Sometime after the second incident the victim obtained a protection from abuse order against Appellant.] On January 20, 2020, Police Officer Donald Pancoast went to a house on North Bouvier Street to serve [the] protection from abuse order. When he arrived at the scene Officer Pancoast spoke to a woman who confirmed that Appellant was present. The officer saw Appellant and proceeded to enter the house, at which time Appellant ran down the steps into the basement. When Appellant came back upstairs after a minute or two, he was taken into custody.

Trial Court Opinion, 4/8/22, at 2-4. Appellant was arrested and charged at CP-51-CR-000822-2020 ("the January 3rd incident") with aggravated assault, conspiracy, theft by unlawful taking, simple assault, and aggravated assault of an unborn child and at CP-51-CR-000823-2010 ("the January 8th incident")

- 3 -

with aggravated assault, robbery, possession of a firearm, firearms not to be carried without a license, carrying firearms in public, theft by unlawful taking, terroristic threats, simple assault, and recklessly endangering another person.

On August 3, 2021, Appellant proceeded to a jury trial. For the January 3rd incident, he was convicted of aggravated assault, conspiracy to commit aggravated assault, theft by unlawful taking, and simple assault. For the January 8th incident, he was convicted of simple assault and recklessly endangering another person. Appellant was acquitted of the remaining charges. On October 8, 2021, Appellant received an aggregate sentence of six to fifteen years of incarceration. Appellant did not file a post-sentence motion but did submit separate timely notices of appeal which we consolidated. Both the trial court and Appellant complied with the mandates of Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

1. Whether there was sufficient evidence to sustain convictions for aggravated assault and whether conviction for that offense was against the weight of the evidence.

2. Whether there was sufficient evidence to sustain convictions for conspiracy-aggravated assault and whether conviction for that offense was against the weight of the evidence.

3. Whether there was sufficient evidence to sustain a conviction for theft by unlawful taking of movable property and whether conviction for that offense was against the weight of the evidence.

Appellant's brief at 5 (unnecessary capitalization removed).[1]

　　We first consider Appellant's sufficiency challenges for the January 3rd aggravated assault, conspiracy, and theft. **See** Appellant's brief at 31-40. Regarding aggravated assault, he claims that the evidence was insufficient to prove that he "did not care whether [the victim] lived or died." **Id**. at 35. Relating to the conspiracy charge, he alleges that there was "no evidence of a shared criminal agreement." **Id**. 38. Finally, Appellant attacks his theft conviction on the grounds that the evidence did not show he intended to keep the victim's belongings after he retrieved them from the ground. **Id**. at 40.

　　Our scope and standard of review when considering challenges to the sufficiency of the evidence are well settled:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

---

[1] Although Appellant has appealed both docket numbers, his claims and arguments relate only to the convictions that resulted from the January 3rd incident. Therefore, we affirm the judgment of sentence that resulted from the January 8th incident without further discussion.

*Commonwealth v. Williams*, 176 A.3d 298, 305–06 (Pa.Super. 2017) (citations and quotation marks omitted).

A person is guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1). "Serious bodily injury" has been defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. An "attempt" is found where an "accused who possesses the required, specific intent acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another." *Commonwealth v. Gray*, 867 A.2d 560, 567 (Pa.Super. 2005). "A person acts intentionally with respect to a material element of an offense when . . . it is his conscious object to engage in conduct of that nature or to cause such a result[.]" *Commonwealth v. Martuscelli*, 54 A.3d 940, 948 (Pa.Super. 2012). Since there is rarely direct evidence of the defendant's intent, intent ordinarily must be proven through circumstantial evidence and inferred from acts, conduct or attendant circumstances. *Commonwealth v. Fortune*, 68 A.3d 980, 984 (Pa.Super. 2013). Accordingly, whether a defendant acted with the necessary intent to sustain an aggravated assault conviction is evaluated based on the

totality of the circumstances, including the defendant's use of a weapon to aid his attack and his statements before, during, or afterwards. *Id*.

A person is guilty of conspiracy with another person to commit a crime if, with the intent of promoting or facilitating its commission, he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903(a). Accordingly, to sustain a conviction of criminal conspiracy to commit aggravated assault, the Commonwealth must establish intent to commit or aid in the commission of aggravated assault, an agreement with a co-conspirator, and an overt act in furtherance of the conspiracy. *Id*. We have held that "acting together before, during, and after an attack on another individual suffices to show a unity of criminal purpose for purposes of sustaining a conviction for criminal conspiracy to commit aggravated assault." *Commonwealth v. Thomas*, 65 A.3d 939, 945 (Pa.Super. 2015) (finding evidence that the attackers were close friends, punched the victim simultaneously, and walked away together was sufficient to establish a conspiracy to commit aggravated assault conviction).

Theft by unlawful taking, under the subsection charged here, occurs when a person "unlawfully takes, or exercises unlawful control over, movable

property of another with intent to deprive [the other] thereof." 18 Pa.C.S.

§ 3921(a). The Crimes Code defines "deprive" as the following:

> (1) To withhold property of another permanently or for so extended a period as to appropriate a major portion of its economic value, or with intent to restore only upon payment of reward or other compensation; or

> (2) to dispose of the property so as to make it unlikely that the owner will recover it.

18 Pa.C.S. § 3901.

Here, the evidence, viewed in the light most favorable to the Commonwealth, overwhelmingly supports Appellant's aggravated assault, conspiracy to commit aggravated assault, and theft convictions. Through the victim's testimony, the evidence established that Appellant and his girlfriend physically attacked the pregnant victim, repeatedly punching her in the head and kicking her in the stomach. *See* N.T. Jury Trial, 8/3/21, at 52-62. During the ongoing assault, Appellant made various statements indicating his desire to kill the victim and her unborn child. *See id*. at 63 ("[F]uck you bitch. I'm going to kill you and this baby today."). Thus, the evidence was sufficient to establish that Appellant intended to inflict serious bodily injury to the victim while acting in concert with his co-conspirator. *See Fortune*, *supra* at 984; *see also Thomas*, *supra* at 945. Afterwards, Appellant retrieved the victim's credit card, cash, and cell phone and drove away, never returning these items to the victim. *See* N.T. Jury Trial, 8/3/21, at 69-70. Accordingly, the evidence was sufficient to establish that Appellant took the victim's personal belongings

with the intent to deprive her of them.  We find the victim's testimony was sufficient to establish the aggravated assault, conspiracy, and theft convictions.  *See Commonwealth v. Johnson*, 180 A.3d 474, 579 (Pa.Super. 2018) (establishing that a single witness's testimony, alone, may be sufficient to establish every element of a criminal offense so long as the testimony "speaks to each element, directly and/or by rational inference").

At the end of each argument section challenging the sufficiency of the evidence, Appellant included a single sentence alleging that the verdicts were also against the weight of the evidence.  *See, e.g.* Appellant's brief at 35 ("Furthermore, under these circumstances, the weight of the evidence did not suggest such indifference to his former wife's pregnant life.").

It is well settled that:  "[a] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing.  Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion."  *See Commonwealth v. Thompson*, 93 A.3d 478, 490 (Pa.Super. 2014) (citations omitted).  Herein, Appellant raised this claim for the first time in his Pa.R.A.P. 1925(b) statement.  Accordingly, this claim is waived.  *See* Pa.R.Crim.P. 607(A); *Thompson*, *supra* at 490.

Judgments of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/9/2022