J-S17023-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| | :           PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| | : |
| | : |
| JASON GONZALEZ | : |
| | : |
| Appellant | : No. 2754 EDA 2024 |

Appeal from the Judgment of Sentence Entered June 7, 2024
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0001280-2023

BEFORE: PANELLA, P.J.E., STABILE, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY STABILE, J.:                          **FILED JUNE 26, 2026**

Appellant, Jason Gonzalez, appeals from his judgment of sentence of six to ten years' imprisonment for aggravated assault under 18 Pa.C.S.A. § 2702(a)(1), robbery, conspiracy, theft by unlawful taking, receiving stolen property, possession of an instrument of crime, simple assault and reckless endangerment. For the reasons provided below, we (1) reverse Appellant's conviction for aggravated assault, (2) remand for correction of a clerical error in the disposition of the conspiracy charge, and (3) remand for resentencing.

The evidence adduced during trial was as follows. On December 17, 2022, at approximately 11:00 a.m., Appellant entered a corner store in the Kensington neighborhood of Philadelphia. N.T. 9/5/23 at 16–17. He was wearing dark jeans, tan boots and a black jacket. Exhibit C-24. While he was

_____

[*] Retired Senior Judge assigned to the Superior Court.

in the store walking the aisles and looking at the security cameras, he was speaking on the phone. N.T. 9/5/23 at 17–18. The corner store's owner, Jose Ammonte, thought Appellant's behavior was suspicious. *Id.* at 18–19. After Appellant left the store, Ammonte followed him outside and saw him get into a green CRV parked nearby. *Id.* at 19. As the CRV drove past the store, Ammonte saw Appellant in the driver's seat and noticed a white sticker on the car's trunk. *Id.* at 19–20.

Later that day, Appellant and a co-conspirator entered the corner store wearing hoods and black face masks. *Id.* at 16–17, 52. Appellant was again wearing tan boots, black jeans, and a black jacket. Exhibits C-11, C-12, C-13, C-24. At that time, Ammonte was in the back of the store cleaning up while his wife (who also worked at the store and was visibly pregnant at the time) sat at the register in the front of the store. N.T. 9/5/23 at 16–17, 20. After hearing the door open, Ammonte walked towards the front of the store and saw Appellant pointing his gun at his wife's stomach. *Id.* at 20–21. The co-conspirator, who was holding a gun in his hand in his hoodie's pocket, intercepted Ammonte in an aisle before he could get to his wife. *Id.* at 20. Ammonte immediately told the men to take what they wanted and not to hurt his wife. *Id.* at 20–21. Appellant then gestured for Ammonte's wife to move from behind the counter to his co-conspirator while he rummaged near the cash register. When he could not find anything, his co-conspirator switched places with him and found a bag of bills next to the register. Exhibits C-11,

- 2 -

C-12, C-13. The two then fled with between $2,000 and $3,000 in cash. *Id.* at 21–22.

Ammonte immediately called 911 and reported the robbery. *Id.* at 23. After the police arrived, he gave detectives permission to recover the video footage from the store's surveillance cameras. *Id.* at 24. He was shown two photo arrays containing Appellant's photo but was unable to identify him. He did, however, identify a photo of the green CRV with a white bumper sticker he had seen Appellant drive earlier that day. *Id.* at 25–26, 43–45, 49–50.

Detective Shawn Ciaurro reviewed the surveillance videos and located the green CRV nearby. *Id.* at 56–57. The vehicle was registered to Appellant's father, who told Detective Ciaurro that Appellant occasionally drove it. *Id.* at 57. Appellant's work ID was found hanging from the vehicle's rearview mirror. *Id.* at 58. While executing a search warrant on Appellant's residence, police recovered from his bedroom clothes that appeared to be the ones that the store's surveillance videos showed he wore on the day of the robbery, both when he appeared to be casing the store and then during the robbery itself (i.e., tan boots, a black face mask, a lighter lanyard, and a pair of jeans). Inside the bedroom the police also found mail addressed to Appellant, identification cards with Appellant's name, and photos of Appellant. *Id.* at 65–66. A warrant was issued for Appellant's arrest. *Id.* at 67.

Approximately one month after the incident, Appellant was arrested during a traffic stop and was wearing a black jacket that appeared to be the same one that the surveillance videos showed he wore before and during the

- 3 -

robbery. *Id.* at 67; Exhibit C-20 A–D. He was charged with aggravated assault under 18 Pa.C.S.A. § 2702(a)(1), robbery, conspiracy and related offenses.

At trial, the Commonwealth introduced testimony from Ammonte and Detective Ciaurro. It also introduced surveillance footage from the corner store and body-worn camera video from the arresting officer showing Appellant wearing the same black coat at the time of arrest that he wore on the day of the robbery. Appellant and the Commonwealth stipulated that had three character witnesses been called, they would have testified that Appellant had a reputation for peacefulness. *Id.* at 81.

Following a non-jury trial, the court found Appellant guilty of all charges. The court sentenced Appellant to 5-10 years' imprisonment for aggravated assault, a concurrent sentence of 5-10 years' imprisonment for robbery, and a consecutive term of 1-2 years' imprisonment for conspiracy. The court did not impose further penalty for the remaining six convictions. Appellant filed a timely motion for reconsideration of sentence, which was denied by operation of law, and this timely appeal.

Through prior counsel, Appellant filed a Pa.R.A.P. 1925(b) statement raising sufficiency, weight, and discretionary sentencing claims. The trial court issued a Rule 1925(a) opinion stating that Appellant waived his sufficiency and weight claims. Prior counsel also filed an appellate brief on Appellant's behalf. The following month, Appellant's current attorney entered his appearance and filed an application to strike and substitute the brief that

prior counsel had filed. Appellant also filed an application for remand to file a supplemental Rule 1925(b) statement in the trial court. This Court granted both applications. Appellant filed an amended Rule 1925(b) statement in the trial court and a new brief in this Court, raising the claims currently before this Court. The trial court then filed a second Rule 1925(a) opinion addressing the claims in the supplemental Rule 1925(b) statement.

Appellant raises the following issues in this appeal:

1. The evidence introduced at trial and all reasonable inferences derived from the evidentiary record, viewed in the light most favorable to the Commonwealth as verdict winner, is insufficient to establish all elements of aggravated assault, robbery, conspiracy, theft, receiving stolen property, possession of an instrument of a crime, simple assault and recklessly endangering another person, beyond a reasonable doubt.

2. The lower court erred in that the verdict was against the greater weight of the evidence as a matter of law to establish [Appellant]'s guilt beyond a reasonable doubt on all charges.

3. The sentence imposed on [Appellant] was harsh and excessive and an abuse of discretion since the lower court failed to properly consider all of the sentencing factors of 42 Pa.C.S.A. § 9721(b) or any mitigating evidence when it imposed the sentence in question.

A. With regard to the charge of Aggravated Assault (F1), [Appellant] was sentenced to five (5) to ten (10) years of incarceration, with regard to the charge of Robbery (F1), [Appellant] was sentenced to five (5) to ten (10) years of incarceration to run concurrently, and with regard to the charge of Conspiracy (F1) [Appellant] was sentenced to one (1) to two (2) years of incarceration to run consecutive to the prior sentences.

i. [Appellant] was suffering from a serious mental illness, so serious that the lower court had previously Ordered

that [Appellant] to be evaluated at Norristown State Hospital.

ii. The lower court witnessed [Appellant] having a psychiatric breakdown during sentencing by whispering to himself what he was going to say and what he had just said to the court. He was clearly becoming confused and distraught prior to the imposition of sentence.

B. [Appellant] believes that his sentence should be reduced to the standard range of sentence of fifty-four (54) months to one hundred eight (108) months and a concurrent, not consecutive, sentence for the Conspiracy Charge.

4. The lower court erred and abused its discretion in that it sentenced [Appellant] in the upper end of the sentencing guidelines without considering mitigating factors and only considered the seriousness of the offense when it imposed sentence.

Appellant's Brief at 9-10.

Appellant first argues that the evidence is insufficient to establish his identity as one of the perpetrators because he has an identical twin brother who could have been the person who committed the crimes.[1] We disagree.

---

[1] The Statement of Questions Presented in Appellant's brief failed to specify the element of aggravated assault that Appellant was challenging. Ordinarily, the appellant's failure to specify the specific element(s) of the offense that he is challenging results in waiver of his sufficiency claim. *Commonwealth v. Walker*, 348 A.3d 1233, 1238 (Pa. Super. 2025). Here, however, after Appellant filed his appellate brief, we remanded this case to the trial court to allow Appellant to file a supplemental statement of matters complained of on appeal. Appellant's supplemental statement raised the specific objection that the Commonwealth failed to prove that he committed the crimes in question instead of his twin brother. Under these circumstances, we decline to find this issue waived.

When reviewing a challenge to the sufficiency of the evidence, our standard is

> whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

***Commonwealth v. Smith***, 206 A.3d 551, 557 (Pa. Super. 2019).

We conclude that the evidence was sufficient to demonstrate that Appellant was one of the perpetrators. Surveillance footage introduced at trial showed an unmasked man appearing to be Appellant casing the store hours before the crime. This man, whom the store owner identified at trial as Appellant, was wearing dark jeans with a lighter leash attached to the pants, tan boots, and a black jacket. The store owner noticed Appellant's suspicious activity and watched him walk out of the store, get into a green CRV parked nearby, and drive away. The store owner's testimony was corroborated by video footage taken from outside the store showing a green CRV with a white bumper sticker drive by minutes after Appellant left the store. This vehicle

was later located and registered to Appellant's father, who told police that Appellant occasionally drove the CRV. The police later found Appellant's work ID hanging from the CRV's rearview mirror.

Surveillance footage from the time of the crime itself shows Appellant wearing the same clothes he had been wearing earlier in the day—dark jeans, tan boots, and a black jacket—with the addition of a black face mask. The police found tan boots, dark jeans, a black mask, and a lighter leash in Appellant's bedroom. The black jacket was recovered from Appellant's person at the time of his arrest. Appellant's arm tattoo, which was visible during trial, was also visible on the store's video footage introduced at trial.

Appellant claims that there was insufficient evidence of his identity as one of the perpetrators because he has an identical twin brother who could have been the person who committed the crime. Other than presenting a photograph indicating that he has a twin brother, Appellant did not present any evidence to support this theory. For example, he presented no evidence that his brother was in the area at the time of the robbery or that his brother has the same arm tattoo he does and that can be seen on the arm of the person who committed the crimes. Further, the clothing that the perpetrator wore before and at the time of the crime was found in Appellant's bedroom or from his person at the time of arrest. Appellant's room contained a single bed and documents such as identification cards and letters containing his name;

no such documents containing the brother's name were found in the room. Thus, this challenge to the sufficiency of the evidence fails.

Next, Appellant also argues that the evidence was insufficient to sustain his conviction for aggravated assault. We agree.

The court found Appellant guilty of aggravated assault under 18 Pa.C.S.A. § 2702(a)(1), which prohibits a person from "attempt[ing] to cause serious bodily injury to another, or caus[ing] such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." *Id.* An attempt takes place when a defendant "acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another" with the specific intent to cause serious bodily injury upon that person. *Commonwealth v. Martuscelli*, 54 A.3d 940, 948 (Pa. Super. 2012). "The intent to cause serious bodily injury may be proven by direct or circumstantial evidence." *Commonwealth v. Matthew*, 909 A.2d 1254, 1257 (Pa. 2006). This intent is evaluated on a case-by-case basis, and the totality of the circumstances is considered, such as "a significant difference in size or strength between the defendant and the victim, any restraint on the defendant preventing him from escalating the attack, the defendant's use of a weapon or other implement to aid his attack, and his statements before, during, or after the attack which might indicate his intent to inflict injury." *Id.*

Our precedents demonstrate that pointing a gun toward the victim during a robbery without uttering a threat does not constitute aggravated assault. *See Commonwealth v. Savage*, 418 A.2d 629, 632 (Pa. Super. 1980); *Commonwealth v. Alford*, 880 A.2d 666, 671 (Pa. Super. 2006).

In *Savage*, during a robbery, the defendant ordered the victim to come downstairs, and when the victim requested permission to get dressed, the defendant struck him on his head with the butt of his revolver and told him to shut up. The defendant was charged with robbery, aggravated assault and other offenses. During trial, the jury asked whether the aggravated assault charge "[arose] out of the alleged fact that the defendant pointed a gun at [the victim] or [arose] out of the alleged fact that the defendant struck [the victim]?" The court instructed that aggravated assault could arise out of either or both alleged incidents. The jury found the defendant guilty of aggravated assault.[2] This Court held that the instruction was erroneous. We reasoned that "[p]ointing a gun at [the victim] in a threat to cause serious bodily injury" could constitute simple assault as "an attempt by physical menace to put another in fear of imminent serious bodily injury." *Id.* at 632 (cleaned up) (citing 18 Pa.C.S.A. § 2701(a)(3)). Merely pointing a gun, however, "could not . . . constitute an aggravated assault." *Id.*

---

[2] Our opinion in *Savage* did not specify which subsection of the aggravated assault statute that the jury found the defendant guilty of violating.

- 10 -

In **Alford**, the defendant, an escapee from jail, banged on the door of the victim's house and demanded entry. When the victim refused, the defendant raised a handgun and pointed it at the victim, who fled. Citing **Savage**, we held, "This evidence is insufficient as a matter of law to prove aggravated assault under [Section 2702](a)(1). It is well settled that merely pointing a gun at another person in a threat to cause serious bodily injury does not constitute aggravated assault."[3] **Alford**, 888 A.2d at 671.

**Savage** and **Alford** have never been overruled and continue to remain good law. Under these decisions, the evidence in the present case was insufficient to sustain Appellant's conviction for aggravated assault under Section 2702(a)(1). Although Appellant pointed a gun at Ammonte's wife's midsection, he did not do anything further, such as fire the gun or utter a verbal threat. "Merely" pointing a gun at Ammonte's wife, repulsive though that act might be, does not constitute aggravated assault. **Savage**, **Alford**, **supra**.

---

[3] **Alford** observed that in **Commonwealth v. Gruff**, 822 A.2d 773 (Pa. Super. 2003), the defendant grabbed the victim from behind, touched the victim's face and neck with a loaded shotgun, and uttered several threats, including, "I just ought to kill you. Do you want to die today or tomorrow?" **Id.** at 671. **Alford** found **Gruff** distinguishable because the defendant in **Alford** "never placed a weapon directly against [the victim's] face or throat, nor did he verbalize any explicit threats of bodily injury. [He] simply demanded to be let into the house, and after [the victim] refused twice, he pointed his gun at her." **Id.** at 672.

The decisions advanced by the Commonwealth in its brief are distinguishable from this case, because the defendants in these decisions did not "merely point" a gun at the victim. *See Matthew*, *supra*;[4] *Commonwealth v. Fortune*, 68 A.3d 980 (Pa. Super. 2013) (*en banc*); *Commonwealth v. Miller*, 217 A.3d 1254 (Pa. Super. 2019).

In *Matthew*, the defendant's car crashed after he lost control of it on Interstate 95. Just prior to the crash, the defendant, an employee at a shoe store, had hit his supervisor with his car after the latter confronted him about boxes of shoes in the car for which the defendant refused to produce receipts. The victim, another driver on the highway, stopped to assist the defendant. Thinking that the victim was a police officer, the defendant pushed a loaded gun into his body. The defendant proceeded to search the car frantically while continuing to point the gun at the victim, and when a second passerby stopped, the defendant threatened to kill the victim. Our Supreme Court held that the evidence satisfied Section 2702(a)(1). The evidence demonstrated the defendant's intent to inflict serious bodily harm on the victim "since he repeatedly threatened to kill the victim . . . If threats alone were not enough to establish his intent, the fact-finder could determine his intent from pushing

_____

[4] The Commonwealth cites this Court's decision in *Matthew* instead of our Supreme Court's decision in *Matthew*, which reached the same result but for slightly different reasons. Since our Supreme Court is the ultimate arbiter of all issues of Pennsylvania law, we will apply our Supreme Court's analysis in *Matthew* instead of this Court's analysis.

the loaded gun against [the victim's] throat and otherwise pointing it at him." ***Id.***, 909 A.2d at 1259.

Several years after ***Matthew***, in ***Fortune***, while the victim was pumping gas at a gas station, the defendant appeared before the victim without warning, pointed a gun at the middle of her forehead, demanded her car keys, and threatened to "blow [her] head off" if she did not comply. ***Id.***, 68 A.3d at 986. The defendant argued that under ***Bryant*** and ***Alford***, the evidence was insufficient to sustain his conviction for aggravated assault under Section 2702(a)(1). Applying the totality of the circumstances standard, we concluded that ***Bryant*** and ***Alford*** were not on point:

> Appellant was not "merely pointing" the gun at the victim while making a conditional threat. Rather, his simultaneous demand to her to act was direct and uttered while he constantly pointed his weapon squarely at a vital part of her body and while he was holding the opposite end of the keys that were also still in her hand. As such, we find there was sufficient evidence from which a jury could have found that Appellant attempted to cause serious bodily injury upon the victim . . .
>
> [W]e hold there was sufficient evidence for the jury to conclude Appellant possessed the requisite intent to inflict serious bodily injury upon the victim when he threatened to "blow her head off." As was the case in ***Matthew***, if this threat alone had not been enough to establish his intent, the jury properly could have determined it from his pointing of the gun at the middle of her forehead during the carjacking.

***Id***. Thus, the evidence was sufficient to affirm the defendant's conviction for aggravated assault. ***Id.***

Finally, in ***Miller***, an argument began between the defendant and a married couple on the roadway. The defendant pointed a gun at the husband's

head from two feet away and threatened to blow his head off. Relying on *Matthew* and *Fortune*, we held that this evidence was sufficient to support the defendant's conviction under Section 2702(a)(1). *Id.*, 217 A.3d at 1257 (evidence was sufficient because "[the defendant] threated [the victim's] life multiple times while pointing a gun directly at [the victim's] head").

*Matthew*, *Fortune* and *Miller* are not on point, because the defendant in each case pointed a gun at, **and** verbally threatened to kill, the victim. Since Appellant pointed a gun at Ammonte's wife without verbally threatening her, *Savage* and *Alford* control this case. Therefore, we reverse Appellant's conviction for aggravated assault under Section 2702(a)(1).

Because reversal of this conviction upsets the trial court's sentencing scheme, we will vacate all of Appellant's sentences and remand for resentencing on all convictions to give the trial court the opportunity to restructure its sentencing scheme. *Commonwealth v. Goldhammer*, 517 A.2d 1280, 1283–84 (Pa. 1986); *Commonwealth v. Williams*, 871 A.2d 254, 266 (Pa. Super. 2005) (if trial court errs in its sentence on one count in multi-count case, all sentences for all counts will be vacated so court can restructure its entire sentencing scheme).

One other issue relating to sufficiency of the evidence requires discussion: Appellant's argument that the evidence is insufficient to sustain his conviction for conspiracy. Clerical discrepancies in the record leave unclear whether this conviction was for conspiracy to commit robbery or conspiracy to

commit aggravated assault. This lack of clarity is important, because the evidence was sufficient to convict Appellant of conspiracy to commit robbery but insufficient to convict him of conspiracy to commit aggravated assault. As a result, we must remand for further proceedings on this issue.

The bills of information charged Appellant with "conspiracy" without identifying the objective of the conspiracy. At the conclusion of trial, the court found Appellant guilty of "conspiracy" without identifying the object of the conspiracy. N.T., 9/5/23, at 97. The Trial Disposition And Commitment Sheet filed on the date of trial states that the court found Appellant guilty of conspiracy to commit aggravated assault. At sentencing, however, the court stated that it was sentencing Appellant for "conspiracy to commit robbery." N.T. 6/7/24 at 43. The written sentencing order contradicted this statement by providing that Appellant was sentenced for conspiracy to commit aggravated assault. In its second opinion, the trial court concluded that the evidence was sufficient to prove both conspiracy to commit robbery and conspiracy to commit aggravated assault.

A person is guilty of criminal conspiracy if he: "(1) entered into an agreement to commit . . . an unlawful act with another person . . . , (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy." *Commonwealth v. Fisher*, 80 A.3d 1186, 1190–91 (Pa. 2013) (citation omitted); *see also* 18 Pa.C.S.A. § 903(a)(1). We agree with the trial court that the evidence was sufficient to prove conspiracy to commit robbery.

Appellant entered into an agreement with another individual to commit a robbery at Ammonte's store and committed multiple overt acts in furtherance of the conspiracy, including accosting Ammonte and taking money from the cash register while holding Ammonte's wife at gunpoint. We disagree, however, with the trial court's determination that the evidence was sufficient to prove conspiracy to commit aggravated assault. We have held above that the evidence was insufficient to prove the underlying offense of aggravated assault. We see no evidence that Appellant agreed with his cohort to perform any unlawful act beyond the act that we find insufficient to prove aggravated assault (pointing a gun at Ammonte's wife).

Under these circumstances, the court's sentencing order is erroneous regardless of which offense the court intended to find that Appellant committed. If the court intended to find Appellant guilty of conspiracy to commit robbery, the sentencing order is erroneous because it entered sentence for the wrong offense, conspiracy to commit aggravated assault. If the court intended to find Appellant guilty of conspiracy to commit aggravated assault, the sentencing order is erroneous because a conviction for conspiracy to commit aggravated assault cannot stand.

The correct remedy under these circumstances is to remand for further proceedings on the conspiracy charge. *Cf. Commonwealth v. Bartic*, 304 A.3d 124, 129 n.2 (Pa. Super. 2024) ("[i]n situations where the written sentencing order differs from the sentence orally announced by the trial court

at the time of sentencing, this Court has held that a written sentencing order which differs from the trial court's intentions that are clearly and unambiguously declared during the sentencing hearing demonstrates a clear clerical error on the face of the record and is subject to later correction") (citations omitted; cleaned up). If the court intended to find Appellant guilty of conspiracy to commit robbery, it should resentence Appellant on this explicit charge. If the court only intended to find Appellant guilty of conspiracy to commit aggravated assault, it should dismiss this charge against Appellant.

Before concluding, we briefly address the other issues raised in Appellant's brief. First, we need not address the claims of sentencing error in Appellant's brief because we are remanding for a new sentencing hearing. Appellant also contends that his convictions are against the weight of the evidence. He has waived this claim by failing to raise the issue orally or by written motion prior to sentencing or in his post-sentence motions. **_See_** **_Commonwealth v. Torsunov_**, 345 A.3d 339, 349 (Pa. Super. 2025).

Judgment of sentence for aggravated assault reversed. Convictions affirmed on all other charges except conspiracy. Case remanded for further proceedings on conspiracy charges as directed above, including resentencing, if necessary. Case remanded for resentencing on all other charges. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/26/2026